ROB BONTA
Attorney General of California
LAURA FAER (SBN: 233846)
DARRELL SPENCE (SBN: 248011)
Supervising Deputy Attorneys General
EDWARD NUGENT (SBN: 330479)
ANTHONY PINGGERA (SBN: 320206)
JENNIFER BUNSHOFT (SBN: 197306)
KATHERINE BRUCK (SBN: 342536)
Deputy Attorneys General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA 94102
 Telephone: (415) 229-0113
 Fax: (415) 703-5480
 E-mail: Edward.Nugent@doj.ca.gov
*Attorneys for Plaintiff State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **STATE OF CALIFORNIA,**<br><br>                                  Plaintiff,<br><br>     **v.**<br><br>**U.S. DEPARTMENT OF EDUCATION; LINDA MCMAHON, IN HER OFFICIAL CAPACITY AS U.S. SECRETARY OF EDUCATION; FRANK E. MILLER, JR., IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE STUDENT PRIVACY POLICY OFFICE OF THE U.S. DEPARTMENT OF EDUCATION; AND UNITED STATES OF AMERICA,**<br><br>                                  Defendants. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Administrative Procedure Act Case<br><br>Courtroom:<br>Judge:<br>Trial Date:<br>Action Filed: |

1

**INTRODUCTION**

1.      Over fifty years ago, the Family Educational Rights and Privacy Act (FERPA) created two separate duties for state educational agencies: first, educational agencies were required, upon a parents' request, to disclose a student's "education records" as defined by the statute; second, educational agencies could not disclose those same records to third parties without prior parental consent. 20 U.S.C. §§ 1232g(a)(1)(A), (b)(1). What FERPA does not do, however, is impose an affirmative duty on educational agencies to disclose education records to a student's parents where the parents have not made any request for education records, require educational agencies to disclose information that falls outside of an "education record" as defined by FERPA, or require educational agencies to disclose records in response to an inquiry from parents that does not constitute a valid request under FERPA.

2.      Defendants unlawfully seek to expand the requirements of FERPA by decree, reading an affirmative duty to disclose student records to parents where none exists and demanding that Plaintiff accede to this interpretation as a new condition of receiving federal education funding.

3.      On or about March 27, 2025, Defendants informed the California Department of Education (CDE) that they were opening an investigation into whether local educational agencies (LEAs) in California are violating FERPA, and whether "CDE facilitated and promoted the adoption of policies and practices that violate FERPA."

4.      Defendants' investigation, instigated at the behest of the advocacy organization California Justice Center,[1] focuses on a select set of education records for just one group of students—transgender students—and specifically records about their gender identity. This singular focus appears, like so many of Defendants' actions, to be motivated by discriminatory animus against transgender people, including transgender students. *See, e.g.*, Exec. Order No. 14,168, 90 Fed. Reg. 8615, 8615 (Jan. 30, 2025) (characterizing transgender identity as "false").

---

[1] The California Justice Center conducts advocacy in several areas, including education. The organization's president previously was the lead attorney in several cases seeking to defend and promote "parental notification policies." *See* https://californiapolicycenter.org/people/emily-rae/.

5.      Defendants and CDE exchanged multiple letters over the next ten months. During that time, CDE twice sent written communications to LEAs explicitly confirming that *all* education records, as defined by FERPA, are subject to FERPA's disclosure requirements absent a federal statutory exemption. At the same time, Defendants sent a written communication to California LEAs stating that FERPA does not impose an affirmative disclosure duty on LEAs.

6.      Nonetheless, on January 28, 2026, Defendants sent a letter of findings to CDE (the Findings Letter), concluding that California and some of its LEAs were not in substantial compliance with FERPA. Namely, the Findings Letter concluded that CDE "facilitated and promoted the adoption of policies and practices that violate FERPA."

7.      The Findings Letter demanded that CDE undertake six "corrective actions," including a written assurance that CDE "will allow [California] LEAs" to employ "pro-parental notification approaches." Defendants threatened that, if California does not comply, Defendants will terminate *all* federal education funding to California, totaling $4.9 billion annually.

8.      FERPA authorizes imposition of this extreme penalty only when an educational agency has failed to substantially comply with FERPA and compliance cannot be secured by voluntary means. The Findings Letter does not support the conclusion that CDE is out of substantial compliance with FERPA. Indeed, Defendants have failed to demonstrate even a *single* violation of FERPA: they do not cite even one instance in which any LEA failed to disclose education records that state a student's gender identity—or any other record—in response to a valid parental request under FERPA.

9.      Defendants cite no authority that would allow them to impose new conditions on the receipt of federal education funding, nor do they provide any support for their claim that Plaintiff State of California, the California Department of Education (CDE), or California LEAs are violating FERPA.

10.     By threatening California and its LEAs with baseless legal action and funding withdrawal if they refuse to agree to Defendants' unlawful demands, Defendants create an imminent risk of irreparable harm to California's proprietary, sovereign, and quasi-sovereign interests.

11.    For these reasons, and those discussed below, Plaintiff State of California respectfully requests that the Court grant declaratory and injunctive relief from the Findings Letter and award other such relief as is requested herein.

**JURISDICTION AND VENUE**

12.    **Jurisdiction:** This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this case arises under the Constitution and laws of the United States.

13.    An actual, present, and justiciable controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a). This Court has authority to grant declaratory relief, injunctive relief, and other relief under both the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and the Court's equitable powers.

14.    Venue is proper in this district under 28 U.S.C. § 1391(e)(1). Defendants are U.S. agencies or officers sued in their official capacities. Plaintiff State of California is a resident of this judicial district, and no real property is involved in this action.

15.    **Divisional Assignment:** Assignment to the San Francisco Division of this District is proper pursuant to Civil Local Rule 3-2(c)-(d) because this case is district-wide and statewide in nature, and Plaintiff State of California maintains offices in the City and County of San Francisco.

**PARTIES**

**I.    PLAINTIFF**

16.    California is a sovereign state of the United States of America. Rob Bonta is the Attorney General of California, and as the State's chief law officer, he is authorized to sue on the State's behalf, including on behalf of the CDE, California LEAs, the State's public schools, and their students. *See* Cal. Const. art. V, § 13; *id.* art. IX, § 5 (requiring the State to "provide for a system of common schools").

17.    In filing this action, California seeks to protect itself, and California schools and students, by preventing the harms threatened by Defendants' illegal attempt to coerce the State into complying with its unlawful corrective actions based on the unsupported position that California is not in substantial compliance with FERPA because it has refused to interpret FERPA's requirements in a manner that far exceeds the scope of the statute.

4

18.     California risks withdrawal of all federal education funding if it does not impose such an interpretation of FERPA on LEAs. Defendants' actions are causing and threaten to cause immediate and irreparable injury to California, including to its proprietary, sovereign, and quasi-sovereign interests.

## II.    DEFENDANTS

19.     Defendant U.S. Department of Education (ED) is a cabinet agency within the executive branch of the U.S. government. 20 U.S.C. §§ 3401 *et seq*.

20.     Defendant Linda McMahon is the U.S. Secretary of Education. She is the head of the U.S. Department of Education and is responsible for all of the decisions and actions of that agency. 20 U.S.C. § 3411. She is sued in her official capacity.

21.     Defendant Frank E. Miller, Jr. is the Director of the Student Privacy Policy Office of the U.S. Department of Education and is responsible for enforcing compliance with FERPA. 20 U.S.C. § 1232g(g); *see also* 34 C.F.R. §§ 99.60-.67 (2026). He is the signatory of the Findings Letter and is sued in his official capacity.

22.     Defendant United States of America includes all executive agencies and departments, including the U.S. Department of Education.

## FACTUAL ALLEGATIONS

## I.    BACKGROUND

### A.    FERPA

23.     The Family Educational Rights and Privacy Act (FERPA) imposes two separate duties on state educational agencies as conditions on the receipt of federal education funding. First, upon receipt of a parent request for inspection and review of educational records as defined by FERPA, LEAs must make a student's education records available to the student's parents. 20 U.S.C. § 1232g(a)(1)(A). Second, LEAs must not improperly disclose those same education records to other parties without written parental consent. *Id.* § 1232g(b)(1).

24.     According to FERPA's controlling regulations, "*Disclosure* means to permit access to or the release, transfer, or other communication of personally identifiable information contained in education records by any means, including oral, written, or electronic means, to any party

except the party identified as the party that provided or created the record." 34 C.F.R. § 99.3 (2026; promulgated Apr. 11, 1988).

25.    "[E]ducation records" are all records that "contain information directly related to a student" that are "maintained by an educational agency or institution or by a person acting for such agency or institution." 20 U.S.C. § 1232g(a)(4)(A). "*Record* means any information recorded in any way, including, but not limited to, handwriting, print, computer media, video or audio tape, film, microfilm, and microfiche." 34 C.F.R. § 99.3.

26.    "[E]ducation records" subject to FERPA do not include: (1) records of individual LEA staff "which are in the sole possession of the maker thereof and which are not accessible or revealed to any other person except a substitute"; (2) records created by an agency's law enforcement personnel for law enforcement purposes; (3) employment records; and (4) medical and mental health records of students over the age of eighteen. 20 U.S.C. § 1232g(a)(4)(B)(i)-(iv).

27.    "FERPA implies that education records are institutional records kept by a single central custodian, such as a registrar." *Owasso Indep. Sch. Dist. No. I-011 v. Falvo*, 534 U.S. 426, 435 (2002). "The word 'maintain' suggests FERPA records will be kept in a filing cabinet in a records room at the school or on a permanent secure database, perhaps even after the student is no longer enrolled." *Id*. at 433. Education records do not include individual classroom or homework assignments, nor do they include the notes of individual teachers or guidance counselors. *Id*. at 435; 20 U.S.C. § 1232g(a)(4)(B)(i).

28.    FERPA does not delineate a specific process for requesting or disclosing documents pursuant to its requirements. Instead, FERPA requires state educational agencies to "establish appropriate procedures for the granting of a request by parents for access to the education records of their children within a reasonable period of time, but in no case more than forty-five days after the request has been made." 20 U.S.C. § 1232g(a)(1)(A). State educational agencies must also "maintain a record of each request for access to and each disclosure of personally identifiable information from the education records of each student." 34 C.F.R. § 99.32(a)(1).

29.    Importantly, FERPA does *not* impose a duty on state educational agencies to disclose *any* student records to the student's parents if the parents do not first submit a valid request to the

6

agency. *See generally* 20 U.S.C. § 1232g; 34 C.F.R. pt. 99. Even when a parent does submit a request pursuant to FERPA, the statute does not impose a duty on state educational agencies to disclose information, documents, or other materials that do not meet the statutory definition of an "education record." 20 U.S.C. § 1232g; *see also Falvo*, 534 U.S. at 433-35.

**B.    Enforcing FERPA Compliance**

30.    Defendant McMahon is empowered to enforce FERPA and has enforcement powers available to her, including but not limited to the ability to withhold federal education funding to an agency that fails to comply. *See* 20 U.S.C. § 1232g(f); 34 C.F.R. § 99.67(a) (2026; promulgated Dec. 2, 2011).

31.    However, Defendants may take such extraordinary action "only if the Secretary finds there has been a failure to comply with [FERPA], and [she] has determined that compliance cannot be secured by voluntary means." 20 U.S.C. § 1232g(f).

32.    Additionally, educational agencies need not be perfectly FERPA-compliant to avoid enforcement penalties. Because FERPA controls "institutional policy and practice, not individual instances of disclosure . . . [r]ecipient institutions can . . . avoid termination of funding [under FERPA] so long as they 'comply *substantially*' with the Act's requirements." *Gonzaga Univ. v. Doe*, 536 U.S. 276, 288 (2002) (emphasis added); *see also* 20 U.S.C. § 1234c(a).

33.    FERPA has never been the beginning and end of student privacy protections under the law. Indeed, FERPA does not "prevent educational agencies or institutions from giving students rights in addition to those given to parents." 34 C.F.R. § 99.5(b) (2026; promulgated Apr. 11, 1988).

34.    FERPA also limits the enforcement actions that can be taken against state educational agencies that act to protect student privacy:

> the refusal of a State or local educational agency . . . to provide personally identifiable data on students or their families, as a part of any applicable program, to any Federal office, agency, department, or other third party, on the grounds that it constitutes a violation of the right to privacy and confidentiality of students or their parents, shall not constitute sufficient grounds for the suspension or termination of Federal assistance.

20 U.S.C. § 1232i(a).

35.    FERPA therefore allows states and LEAs to enact laws and policies that protect student privacy so long as those laws and policies do not conflict with FERPA's disclosure requirements.

36.    Consistent with its guidance to California LEAs, Plaintiff State of California, via CDE, does not maintain any policies or practices that pose an obstacle to parents' rights to request to inspect and review their child's education records under FERPA.

## II.    THE FERPA COMPLIANCE INVESTIGATION

### A.    Defendants Initiate the FERPA Compliance Investigation on March 27, 2025

37.    On March 27, 2025, Plaintiff State of California, via CDE, received a letter from Defendant Miller stating that ED was initiating an investigation, pursuant to its authority under 34 C.F.R. § 99.60 and 20 U.S.C. § 1232g(f), into whether "numerous [LEAs] in California may be implementing policies and practices that violate [FERPA]" and whether "[CDE] played a role, either directly or indirectly, in the adoption of these practices in supporting the recently enacted California Assembly Bill 1955 ('AB 1955')."[2] A true and correct copy of the letter initiating the FERPA investigation is attached hereto as Exhibit A.

38.    Pursuant to AB 1955, codified in relevant part at sections 220.3 and 220.5 of the California Education Code, an employee of a California LEA cannot be "required to disclose any information related to a pupil's sexual orientation, gender identity, or gender expression to any other person without the pupil's consent *unless otherwise required by state or federal law*." Cal. Educ. Code § 220.3(a) (emphasis added); *accord id.* § 220.5(a). Notably, AB 1955 does not "forbid a school district from adopting a policy that employees may elect to make such disclosures." *City of Huntington Beach v. Newsom*, 2025 WL 3169324 at *2 (9th Cir. Sep. 12, 2025)

39.    The letter from Defendant Miller restated the California Justice Center's opinion that AB 1955 recognized "a nonexistent right of privacy in minors from their parents regarding a

_____

[2] What Defendants refer to as AB 1955 has been codified, in relevant part, as sections 220.3 and 220.5 of the California Education Code.

8

child's gender identity at school under the California Constitution" that impermissibly exempted information related to a student's gender identity from FERPA's disclosure requirements. *See* Ex. A at 2. Defendant Miller explained that the "preliminary analysis of the information provided by CJC in conjunction with [SPPO's] reading of AB 1955[] gives [SPPO] reasonable cause to believe that the LEAs throughout California may be violating FERPA." *Id.* at 3. "Accordingly," Defendant Miller explained, "the CDE must ensure that all LEAs comply with FERPA regarding parents' rights to inspect and review any education records maintained by the LEA." *Id.*

**B.    Subsequent Communications from ED and CDE During the Pendency of the FERPA Investigation**

40.    On March 28, 2025, Defendant McMahon issued a letter to "Educators," and attached a letter from Defendant Miller to "Chief State School Officers and Superintendents." A true and correct copy of Defendant McMahon's letter, with Defendant Miller's attachment, is attached hereto as Exhibit B. After warning of "pervasive indoctrination taking place in many classrooms" involving "gender ideology and critical race theory" (without defining those concepts or citing any evidence), the letter and attachment purported to "remind[] educational institutions receiving federal financial assistance that they are obligated to abide by FERPA . . . if they expect federal funding to continue." Ex. B, McMahon Letter at 1-2.

41.    In these documents, Defendants expressly stated that "**FERPA does not provide an affirmative obligation for schools to inform parents about any information, even if that information is contained in a student's education records**." Ex. B, Miller Attachment at 1 (emphasis added). Defendant Miller also "request[ed] that <u>each [state educational agency] submit no later than April 30, 2025</u>, documentation . . . to provide assurance that the [state educational agency] and their respective LEAs are complying with the provisions of FERPA." Ex. B, Miller Attachment at 3.

42.    On April 1, 2025, in response to ED's letter initiating the FERPA investigation and the letter and attachment issued to the California LEAs by Defendants McMahon and Miller, CDE sent an official letter titled "Facts to Consider Regarding FERPA and AB 1955" to all California county and district superintendents and charter school administrators, a true and correct

9

copy of which is attached hereto as Exhibit C. This letter emphasized that "AB 1955 does **not** prohibit LEA staff from sharing any information with parents" and that "there is no conflict between AB 1955 and FERPA, which permits parental access to their student's education records upon request." Ex. C at 1.

43.    On April 11, 2025, CDE sent an official letter in reply to Director Miller's letter initiating the FERPA investigation. A true and correct copy of CDE's reply to the investigation letter is attached hereto as Exhibit D. In its reply, CDE stated its position that (1) there is no conflict between FERPA and AB 1955 and (2) AB 1955 explicitly states that it applies only insofar as it is consistent with other state and federal laws. The letter notes that "FERPA does not impose an affirmative duty on schools to disclose information about a student to parents" (citing Defendants McMahon and Miller's letter and attachment issued on March 28), and that AB 1955 "only prohibits schools and school districts from compelling staff to affirmatively disclose without a student's consent." *See generally* Ex. D. CDE provided three samples of relevant guidance and notices it had provided to California LEAs "to ensure [they] understand that they can comply with both FERPA and AB 1955." Ex. D at 2.

44.    Also on April 11, 2025, CDE sent an official letter titled "Further Update Regarding FERPA and AB 1955" to all California county and district superintendents and charter school administrators, a true and correct copy of which is attached hereto as Exhibit E. This letter informed recipients of CDE's response to the FERPA investigation letter and reiterated that "there is no conflict between the provisions of AB 1955 and a parent's right to inspect and review their children's education records . . . under FERPA," and that "AB 1955 includes language requiring compliance with state and federal laws." Ex. E at 1.

45.    On April 24, 2025, CDE sent an official letter responding to Defendant Miller's March 28 request for documentation of FERPA compliance. A true and correct copy of CDE's response is attached hereto as Exhibit F. CDE's response cited numerous efforts by CDE to ensure FERPA compliance, including trainings, presentations, informational webpages, a dedicated email address for processing "privacy and FERPA-related inquiries" from "both LEAs and families," and a social media profile "used for sharing FERPA updates and resources." *See*

*generally* Ex. F. The response also stated that CDE had informed California LEAs that AB 1955 "does not mandate nondisclosure of a student's gender identity," that "AB 1955 does not prohibit LEA staff from sharing any student information with parents," and that AB 1955 does not conflict with "parents' rights to request to inspect and review their student's education records under FERPA, even if such education records contain information related to a student's sexual orientation, gender identity or gender expression." Ex. F at 3.

46.    Also on April 24, 2025, CDE sent an official letter titled "Third Update Regarding FERPA" to all California county and district superintendents and charter school administrators, a true and correct copy of which is attached hereto as Exhibit G. This letter informed California LEAs of CDE's response to Defendant Miller's request for information. *See generally* Ex. G.

47.    On June 3, 2025, Plaintiff State of California, via CDE, received another letter from Defendant Miller, a true and correct copy of which is attached hereto as Exhibit H. In this letter, Defendant Miller stated that CDE's previous notices did not contain "specific reference to 'gender support plans,'" and alleged that "parental advocacy groups, such as the 'Moms for Liberty,' have expressed concern that school districts in California continue to develop [gender support plans] without parental awareness." Ex. H at 2. Defendant Miller admitted that Defendants "have not independently validated this data," but nevertheless "have similar concerns regarding how 'gender support plans' are shared with parents at the district level." *Id.* Defendant Miller concluded by requesting that CDE issue "[a]n additional notice to superintendents and administrators, like the one issued on April 1, 2025, reminding them that 'gender support plans' are typically education records under FERPA," and provide "[a] plan of action demonstrating how CDE will ensure LEAs are complying with the provisions of FERPA . . . given the context of AB 1955." *Id.*

48.    On June 9, 2025, CDE responded to Defendant Miller's June 3 letter. A true and correct copy of CDE's response is attached hereto as Exhibit I. In this letter, CDE summarized its previous communications with ED and California LEAs in compliance with ED's FERPA investigation. Ex. I at 1-2. CDE stated that it was "not aware of any legal authority" to support the demands in ED's June 3 letter, and reiterated that CDE's previous letters to California LEAs

1    "sufficiently apprise them of their obligations under FERPA" and "demonstrate CDE's support of

2    FERPA compliance by LEAs." *Id.* at 2-3.

3        49.    On knowledge and belief, Defendants did not respond to CDE's June 9 letter or offer

4    any legal authority to support Defendant Miller's demands in his June 3 letter.

5        **C.    Defendants Issue the Findings Letter on January 28, 2026**

6            **1.    Defendants Conclude That CDE Violated FERPA**

7        50.    On January 28, 2026, Defendants sent the Findings Letter to CDE, signed by

8    Defendant Miller, which details "the outcome of the investigation" into CDE's potential

9    violations of FERPA. A true and correct copy of the Findings Letter is attached hereto as

10   Exhibit J.

11       51.    The Findings Letter concludes that CDE "create[d] powerful state-directed pressure

12   for LEAs to adopt practices that are likely to lead to—and have led to—FERPA noncompliance"

13   and that evidence "hostility toward transparent communication with parents." Ex. J at 1-2.

14       52.    The Findings Letter alleges that CDE has:

15       systematically fostered a legal environment where schools maintain, or feel obligated
         by law to maintain, information about a student's "gender identity" and "gender
16       expression" that is actively withheld from parents. In many cases LEAs do so by
         maintaining documentation, such as "gender support plans," not as part of the
17       cumulative record open to inspection by parents, but as "unofficial records" to which
         the school may not provide access upon a parent's request. This practice violates the
18       federally recognized right of parents to inspect and review all education records
         related to their minor children.
19

20   Ex. J at 2.

21       53.    This conclusion is not supported by any of the findings set forth in the Findings

22   Letter.

23       54.    Neither federal nor state law defines a "gender support plan." As used in the Findings

24   Letter, Defendants appear to define a gender support plan as a document developed by an LEA

25   that a transgender student can fill out, with or without the assistance of their parents, that is

26   designed to inform and guide LEA staff members regarding the student's social transition.[3] Ex. J

27       [3] Social transition is a non-medical, individualized process in which a person changes
     various aspects of their gender expression (such as their name, pronouns, clothing, or hairstyle) to
28   align with their gender identity.

at 3. The Findings Letter does not identify any instance in which CDE has advised LEAs that gender support plans that constitute "education records" under FERPA must nonetheless be withheld. As CDE informed Defendants in its letter on April 11, 2025, and as CDE communicated to California LEAs on April 1, 2025, to the extent that a student's gender support plan meets the definition of an "education record" under FERPA, that gender support plan would be subject to the same disclosure requirements as any other education records pursuant to a parental request to inspect records. *See generally* Exs. C, D. As detailed below, CDE has recently reiterated to LEAs that gender support plans remain subject to a request for parental review and inspection of records under FERPA.

55.    The Findings Letter claims that "[t]he persistent efforts by schools across the state to hide such matters from parents cannot be squared with FERPA." Ex. J at 3. As examples of these "persistent efforts," the Findings Letter identifies a number of districts across California that have instituted policies to preserve the confidentiality of student gender support plans. Ex. J at 3-7. The Findings Letter does not, however, state that any of these confidentiality policies have led to a failure to disclose education records under FERPA. In fact, the Findings Letter does not identify a *single* instance in which a California LEA actually failed to produce education records, including but not limited to a student's gender support plan, in response to a parental request for records under FERPA.

56.    The Findings Letter also claims that California LEAs are using internal data management software systems to hide gender-identity-related information from parents. Ex. J at 5-6. Again, however, the Findings Letter does not allege a single instance in which a California LEA actually failed to provide internal data management software records in response to a parental request for records under FERPA, to the extent that such records could be considered "education records" under FERPA.

57.    The Findings Letter alleges that some California LEAs maintain policies that delineate between "official" and "unofficial" records for the purposes of FERPA disclosures. Ex. J at 7-8. No such delineation is required by, or reflected in, state law regarding educational records. The fact that some LEAs used that terminology in their policies is not itself evidence of a

13

failure by those LEAs to adhere to FERPA's disclosure requirements. Whether an education record is labeled "official" or "unofficial" does not determine whether an education record must be disclosed under FERPA in response to a valid parental request. There is no evidence in the Findings Letter that LEAs that have used this terminology have improperly denied valid FERPA requests for records containing information related to a student's gender identity. Moreover, there is *zero* evidence and no finding that the State, through CDE, has policies that facilitate or encourage such alleged nondisclosure—to the contrary, the State has consistently conveyed that LEAs must comply with valid parental requests for educational records under FERPA.

58.     Despite the complete lack of supporting evidence, ED concludes that CDE has contradicted "FERPA's clear commands," and engaged in a pattern or practice that has effectively pressured school districts to violate FERPA. Ex. J at 9. ED categorizes CDE's instructions to LEAs as "an unbroken string of communications directing schools to hide 'gender identity' information from parents contrary to Federal law." Ex. J at 11.

59.     The only way that California's instructions to LEAs could fail to comply with FERPA is if FERPA contained an affirmative duty for LEAs to disclose information contained in a student's records to the student's parents prior to a parental request for records. But, as stated previously, FERPA imposes no such duty, and Defendants themselves admitted as much in their March 28, 2025, letter to California LEAs. Ex. B, Miller Attachment at 1. However, ED explicitly dismisses CDE's attempts to point out that fact as "unconvincing" and "unpersuasive." Ex. J at 16.

60.     By that same token, FERPA does not impose a duty on LEAs to disclose information beyond statutorily defined "education records" to parents, nor does it impose a duty on LEA staff to disclose *any* records to parents absent a valid request for records pursuant to FERPA and the LEA's request policies.

## 2.     Defendants Demand "Corrective Actions" in the Findings Letter

61.     The Findings Letter acknowledges that a prior SPPO letter suggested that clarifying to LEAs that gender support plans are records for purposes of FERPA "would have alleviated [its] concern." Ex. J at 18. But the Findings Letter then reverses course, and explains that, "[u]pon

closer inspection . . . simply specifying to your LEAs that 'gender support plans' are considered education records under FERPA and are therefore also subject to review and inspection by parents of students, would not be sufficient in addressing the issues laid out in this [letter]." Ex. J at 18. Accordingly, the Findings Letter includes a list of six "corrective actions" that CDE and California LEAs must implement in order to "resolve this investigation":

> (1)  Publicize a clear definition of "official" and "unofficial" education records and then specify that under Federal law all forms of education records that do not otherwise see an exception under FERPA are subject to parental inspection upon request. This includes "gender support plans," any gender-related modifications to student documents, forms, and other internal files or records related to these changes. (This would require SPPO's review and approval prior to statewide issuance.[4])

> (2)  Issue a new notice to superintendents and administrators informing them: that AB 1955, as well as all other CA education laws, regulations, and policies, should not be interpreted to undermine or contradict Federal law; that "gender support plans" or other related documentation that is directly related to a student and is maintained by the district or school, whether in official or unofficial files, are considered education records under FERPA, and are thus subject to review and inspection by the student's parents; and that violations of FERPA risk loss of Federal financial assistance. (This would require SPPO's review and approval prior to statewide issuance.)

> (3)  Have LEAs submit certifications that they understand and are in compliance with corrective actions (1 and 2). Submit a report to this Office confirming which LEAs have certified and provide a list of those that have not.

> (4)  Provide written assurance to this Office that CDE will allow LEAs to enforce FERPA regarding "gender identity" and pro-parental notification approaches in a manner that aligns with the needs of the districts to ensure compliance.

> (5)  Provide written assurance to this Office, that CDE will incorporate into its established compliance monitoring program LEA compliance with FERPA, including the specific provisions of FERPA as related to the issues addressed in this complaint, and

> (6)  As part of the newly mandated training established on July 1, 2025, that satisfies the California Education Code (EC) Section 218.3(b)(1)'s (LGBTQ) cultural competency training for teachers and other certificated employees, the CDE must add FERPA training content that is approved by SPPO. Further, any other teacher trainings that reference privacy, "gender identity,"

---

[4] "SPPO" is the Student Privacy Policy Office of the U.S. Department of Education. The current Director of SPPO is Defendant Miller.

15

discrimination/harassment or other similar topics will also be required to include the same FERPA training content approved by SPPO.

Ex. J at 18–19.

62.     If Plaintiff does not voluntarily comply with these "corrective actions" as written, ED asserts that it will have no choice but to terminate all federal education funding to Plaintiff State of California. *See* Ex. J at 3, 9, 18-19. The Findings Letter gives Plaintiff until close of business on February 11, 2026, to respond. *Id.* at 20.

63.     Plaintiff State of California has not violated FERPA. The Findings Letter sets forth no evidence that any California LEA has failed to appropriately respond to a FERPA request, and the Findings Letter sets forth no other evidence to suggest that California is out of substantial compliance with FERPA.

64.     There is no legal authority or evidence that supports the "corrective actions" or requires CDE to take those actions. The "evidence" that ED invokes to support its conclusions reveals three fundamental misunderstandings about FERPA. First, FERPA does not impose any affirmative duty on LEAs to disclose records absent a parental request. Thus, any evidence about school districts creating gender support plans with students without first notifying parents is irrelevant. Second, FERPA requires only the disclosure of educational records, not information or materials that do not fit within the statutory definition. Therefore, whether or to what extent LEA staff refuse to share non-record information with parents is irrelevant. Lastly, FERPA only requires disclosure in response to valid requests. Where a parent's request for information does not conform with the procedures that an LEA has established for requesting records under FERPA, a school does not violate FERPA by refusing to disclose the requested information.

65.     Even if Defendants had identified an instance where an LEA violated FERPA, that would not constitute "substantial noncompliance" by the State, and threatening termination of all funding to the State, rather than seeking compliance by the relevant LEA, is a violation of federal law and without any legal authority.

66.     Defendants' demand that CDE adopt the "corrective actions" listed in the Findings Letter is in violation of federal law and without any legal authority.

67.     For example, Defendants' imposition of a request for assurance from CDE to read FERPA as requiring "pro-parental notification approaches"—which the Findings Letter does not define—attempts to impose a new, undefined duty to disclose on California and its LEAs that FERPA does not include.

68.     Additionally, Defendants' demand to dictate the form and substance of Plaintiff's LEA personnel trainings violates the statutory prohibition on federal "direction, supervision, or control over . . . the administration or personnel" of state educational agencies. 20 U.S.C. § 1232a.

69.     Nor can ED demand a process of extensive new certifications from all California LEAs "that they understand and are in compliance with" FERPA, *see* Ex. J at 18, as California has already provided the required single set of assurances to ED in connection with California's consolidated applications for federal funding, and CDE and all California LEAs have already certified compliance with FERPA itself.

70.     To the extent that ED seeks to place a new condition on federal funding, Plaintiff State of California could not have had clear notice of such a funding condition. FERPA does not impose an affirmative duty on state educational agencies to disclose any changes in a student's educational records to a student's parents absent a valid parental request to access and inspect records, nor does it impose a duty to provide anything other than "education records" in response to a valid request.

71.     Lastly, ED has not identified a single instance in which a California LEA has withheld gender support plans or other gender-identity-related education records—or indeed any other education record—in response to a parental request for education records under FERPA.

72.     Even if ED has such evidence, penalties are authorized only when an LEA is out of substantial compliance with FERPA. Defendants have made no effort to explain how the findings described in the Findings Letter lead ED to conclude that California or its LEAs are out of substantial compliance with FERPA.

73.     ED's unlawful threat to terminate all federal education funding for California if CDE does not comply with the Finding Letter's demands presents an imminent and irreparable injury

17

1  to California and infringes upon the State's substantial interests. California receives

2  approximately $4.9 billion per year in federal education funding, of which approximately

3  $4.8 billion currently remains available for drawdown. See Ex. J at 3. There are nearly 2,000

4  LEAs in California serving approximately 5.8 million children across the State in nearly 10,000

5  public schools. The loss of all $4.9 billion in funding would have a catastrophic impact for

6  California's education system, as California LEAs rely on federal funding to operate. If this

7  funding were disrupted, children in California would suffer irreparable, lifelong harms to their

8  intellectual and personal development; many school faculty and staff would be laid off due to

9  severe funding decreases, while those that remained would have an increased workload; schools'

10  reputations and ties to the communities they serve would be damaged; and the State and LEAs

11  would be faced with chaos and disruption caused by uncertainty about the funding on which they

12  rely.

13       74.    However, in an effort to avoid the devastating loss of federal education funding, CDE

14  nevertheless issued another letter to California's education leaders on the date of this filing,

15  stating once again that LEAs must abide by FERPA's disclosure requirements, that gender

16  support plans are education records covered by FERPA, and that, after receiving a valid parental

17  request to inspect records under FERPA, LEAs must disclose a student's education records

18  regardless of where those education records are stored.

19                                    **CAUSES OF ACTION**

20                                          **COUNT I**

21  **Declaratory Judgment That California Is Not Out of Substantial Compliance with FERPA**

22             **(20 U.S.C. § 1232g, 28 U.S.C. § 2201(a); Against All Defendants)**

23       75.    Plaintiff State of California incorporates by reference the foregoing paragraphs of this

24  Complaint as if set forth herein.

25       76.    The Declaratory Judgment Act states, in relevant part: "In a case of actual

26  controversy within its jurisdiction . . . any court of the United States, upon the filing of an

27  appropriate pleading, may declare the rights and other legal relations of any interested party

28

COMPLAINT

1  seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C.

2  § 2201(a).

3    77.    An actual and substantial controversy exists between Plaintiff State of California and

4  Defendants about whether the actions by CDE detailed in the Findings Letter constitute a

5  violation of FERPA and render the State out of substantial compliance with FERPA.

6    78.    This action is presently justiciable because Defendants have threatened to take

7  enforcement action against both the State and California LEAs by withdrawing all federal

8  education funding to the State if California does not implement the six "corrective actions" that

9  ED asserts will bring the State into compliance with its erroneous and unsupported interpretation

10  of FERPA. Ex. J at 17-18.

11    79.    By contrast, Plaintiff asserts, via statements by CDE in multiple written

12  communications to all California LEAs that state law should be enforced consistently with

13  FERPA's existing disclosure requirements, and that gender support plans and gender-identity-

14  related education records are education records as defined by FERPA.

15    80.    Contrary to Defendant's assertions, CDE has not coerced, directed, or required any

16  LEA to violate FERPA.

17    81.    California is facing the imminent and irreparable harm of being required to

18  implement an erroneous interpretation of FERPA.

19    82.    California is also facing the imminent and irreparable harm of Defendants' threat to

20  withhold all federal education funding due to Defendants' erroneous interpretation of FERPA.

21    83.    An order that CDE is not out of substantial compliance with FERPA will clarify the

22  rights and obligations of the parties and, therefore, pursuant to 28 U.S.C. § 2201(a), is appropriate

23  to resolve this controversy.

**COUNT II**

**Ultra Vires**

**(Against All Defendants)**

27    84.    Plaintiff State of California incorporates by reference the foregoing paragraphs of this

28  Complaint as if fully set forth herein.

19

COMPLAINT

85.   An agency cannot take any action that exceeds the scope of its constitutional or statutory authority.

86.   Federal courts possess the power in equity to "grant injunctive relief . . . with respect to violations of federal law by federal officials." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326-27 (2015). The Supreme Court has repeatedly allowed equitable relief against federal officials who act "beyond th[e] limitations" imposed by federal statute. *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949).

87.   Federal law prohibits ED from "exercis[ing] any direction, supervision, or control over the curriculum, program of instruction, administration, or personnel of any educational institution, school, or school system," 20 U.S.C. § 1232a, and ED therefore cannot demand changes to "teacher trainings" and trainings for "certificated employees" or editorial control over those changes, *see* Ex. J at 19.

88.   Defendants have acted ultra vires to the extent they are attempting to use FERPA to: (1) impose an affirmative duty on CDE and California's LEAs to disclose education records related to a student's gender identity to a student's parents where the parents have not made any request for education records; or (2) require CDE and California's LEAs to disclose information, materials, or documents related to gender identity that fall outside of an "education record" as defined by FERPA; or (3) require CDE and California's LEAs to disclose records related to a student's gender identity in response to an inquiry from parents that does not constitute a valid request under FERPA. *See* Ex. J at 18 (demanding "written assurance to this Office that CDE will allow LEAs to enforce FERPA regarding . . . pro-parental notification approaches").

89.   CDE and all California LEAs have already provided an assurance of compliance with FERPA. Defendants have no authority to demand that CDE and California LEAs now certify or provide written assurance that they will comply with Defendants' unsupported interpretation that FERPA requires some undefined "pro-parental notification approaches."

90.   Pursuant to 28 U.S.C. § 2201(a), Plaintiff State of California is entitled to a declaration that Defendants acted ultra vires by demanding that the State and California LEAs

COMPLAINT

1  comply with the "corrective actions" contained in the Findings Letter and that CDE and

2  California LEAs are not obligated to take the corrective actions.

3      91.    California is further entitled to a preliminary and permanent injunction prohibiting

4  Defendants from (1) taking enforcement action predicated on the Findings Letter or (2) making

5  any demands substantially similar to those contained in the Findings Letter.

6                                   **COUNT III**

7                      **Spending Clause: Lack of Clear Notice**

8              **(U.S. Const. art. I, § 8, cl. 1; Against All Defendants)**

9      92.    Plaintiff State of California incorporates by reference the foregoing paragraphs of this

10  Complaint as if fully set forth herein.

11      93.    To the extent that the Findings Letter is intended to create a new condition on federal

12  education funding, Plaintiff State of California and California LEAs did not have clear notice that

13  federal education funding would be conditioned on the imposition of either an affirmative duty to

14  disclose education records under FERPA or a duty to disclose gender-related records that do not

15  meet the definition of an education record, as neither the text of FERPA nor its controlling

16  regulations impose such a duty.

17      94.    Article I of the U.S. Constitution specifically grants Congress the power "to pay the

18  Debts and provide for the common Defense and general Welfare of the United States." U.S.

19  Const. art. I, § 8, cl. 1.

20      95.    Incident to the spending power, "Congress may attach conditions on the receipt of

21  federal funds." *South Dakota v. Dole*, 483 U.S. 203, 206 (1987). However, any conditions must

22  be imposed "unambiguously" to enable "States to exercise their choice knowingly, cognizant of

23  the consequences of their participation." *Id*. at 207 (quoting *Pennhurst State Sch. & Hosp. v.*

24  *Halderman*, 451 U.S. 1, 17 (1981)). And courts must construe funding conditions to ensure that

25  funding recipients had clear notice of funding conditions. *Cummings v. Premier Rehab Keller,*

26  *P.L.L.C.*, 596 U.S. 212, 219 (2020).

27      96.    FERPA does not condition federal education funding provided by Defendants on the

28  recipient certifying that they have or will impose an affirmative duty to notify parents regarding

the existence of their child's gender support plan or of any other education records related to that student's gender identity. Nor does it condition federal education funding on a certification from the recipient that they will provide information that does not constitute an "education record" in response to a parent's request, or that it will provide "education records" in response to an invalid request.

97.     Therefore, imposing any such condition on federal education funding would violate this limitation on the spending power, because, inter alia, California did not have "clear notice" of such a condition. *See Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006).

98.     Additionally, to the extent that Defendants are attempting to create such a condition by means of the Findings Letter, such a condition is unlawful because the Findings Letter was issued after California accepted federal funds, and Defendants cannot "surpris[e] participating States with post acceptance or 'retroactive' conditions." *Pennhurst*, 451 U.S. at 25.

99.     Pursuant to 28 U.S.C. § 2201(a), Plaintiff State of California is entitled to a declaration that federal funds are not conditioned on compliance with the Findings Letter or on adopting a policy of affirmatively notifying parents about any information regarding their child's gender identity, including the existence of a gender support plan; of providing information related to gender identity that does not constitute an "education record" as defined by FERPA; or of providing records in response to an invalid request.

100.   Plaintiff State of California is also entitled to a preliminary and permanent injunction barring Defendants from suspending funds or otherwise taking enforcement action against California on the basis of such a purported funding condition.

### COUNT IV

**Agency Action That Is Contrary to Law, Unconstitutional, and Exceeds Statutory Authority**

**(5 U.S.C. § 706(2)(A)-(C); Against Defendants ED, McMahon, and Miller)**

101.   Plaintiff State of California incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

102.   Under the Administrative Procedure Act, a court shall "hold unlawful and set aside agency action" that is "not in accordance with law," "contrary to constitutional right," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A)-(C).

103.   The Findings Letter is reviewable as final agency action under 5 U.S.C. § 704, because it (1) definitively demands that California LEAs act contrary to both state and federal law, with no indication whatsoever that this demand is in any way "merely tentative or interlocutory"; and (2) purports to determine CDE's and California LEAs' "obligations," from which "legal consequences will flow," given Defendants' threat of terminating all federal education funding to the State if California LEAs do not accede to their demands. *See U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 578 U.S. 590, 597 (2016) (quoting *Bennett v. Spear*, 520 U.S. 157,177-78 (1997)).

104.   As explained in Counts I through III, *supra* ¶¶ 56-84, the Findings Letter is contrary to law, exceeds Defendants' statutory authority, and seeks to impose a new condition on federal education funding in violation of the Spending Clause.

105.   Pursuant to 5 U.S.C. § 705, California is entitled to a stay of the Findings Letter "to preserve status or rights pending conclusion of the review proceedings."

106.   Pursuant to 5 U.S.C. § 706(2), the Court must vacate the Findings Letter. *See Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 413-14 (1971) (noting mandatory language of § 706).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff State of California respectfully requests that this Court enter judgment in its favor and grant the following relief:

1.     Declare that Defendants have not established that Plaintiff State of California is out of substantial compliance with FERPA;

2.     Declare that Defendants' demands, as enumerated in the "corrective actions" in the Findings Letter, are either legally unsupported and therefore ultra vires or would violate federal law;

1    3.    Declare that CDE and California LEAs are under no obligation to adopt or enforce

2    any of the "corrective actions" enumerated in the Findings Letter;

3    4.    Declare that Defendants acted ultra vires to the extent that they attempted to impose

4    upon Plaintiff an affirmative duty to disclose education records that contain information related to

5    a student's gender identity to the student's parents under FERPA; to disclose information that

6    does not constitute an "education record"; or to respond to invalid requests for records;

7    5.    Declare that Defendants acted ultra vires to the extent that they attempted to control

8    or dictate the content of CDE trainings for teachers or other staff in LEAs, in violation of

9    20 U.S.C. § 1232a;

10    6.    Declare that federal education funds are not conditioned on compliance with the

11    Findings Letter;

12    7.    Preliminarily and permanently enjoin Defendants (including any officers, employees,

13    and agents thereof) from taking any enforcement action, including but not limited to withholding

14    funds, predicated on the Findings Letter or making any similar demands for "corrective actions"

15    to enforce compliance with FERPA;

16    8.    Issue a stay of the effective date of the Findings Letter, or other relief, pursuant to

17    5 U.S.C. § 705, to preserve status or rights pending conclusion of the review proceedings;

18    9.    Vacate and set aside the Findings Letter, as required by 5 U.S.C. § 706(2);

19    10.    Award Plaintiff State of California reasonable costs and expenses, including

20    attorneys' fees, pursuant to 28 U.S.C. § 2412; and

21    11.    Grant such other and further relief as the Court deems just and proper.

22

23

24

25

26

27

28

COMPLAINT

Dated:  February 11, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
LAURA FAER
DARRELL SPENCE
Supervising Deputy Attorneys General


*/s/ Edward Nugent*
EDWARD NUGENT
ANTHONY PINGGERA
JENNIFER BUNSHOFT
KATHERINE BRUCK
Deputy Attorneys General
*Attorneys for Plaintiff State of California*

COMPLAINT