# EXHIBIT A



UNITED STATES DEPARTMENT OF EDUCATION

STUDENT PRIVACY POLICY OFFICE

March 27, 2025

Honorable Tony Thurmond
Superintendent of Public Instruction
1430 N Street, Suite 5602
Sacramento, California  95814-5901

Via email: tthurmond@cde.ca.gov

Complaint No. 25-0382
Family Educational Rights
and Privacy Act

Dear Superintendent Thurmond:

It has come to the attention of the U.S. Department of Education's (Department) Student Privacy Policy Office (Office or SPPO) that numerous local educational agencies (LEAs) in California may be implementing policies and practices that violate the Family Educational Rights and Privacy Act (FERPA).  20 U.S.C. § 1232g; 34 CFR Part 99.   FERPA provides that parents have a right to inspect and review their children's education records, which are defined as records that are directly related to a student and maintained by an educational agency or institution, or by a party acting for the agency or institution.  20 U.S.C. § 1232g(a)(l)(A); 34 CFR Part 99, Subpart B, and § 99.3 ("Education records").  Once a student reaches 18 years of age or attends a postsecondary institution, all FERPA rights transfer from parents to the student.  34 CFR §§ 99.3 ("Eligible student") and 99.5.  We assume for purposes of this letter that the students in question are not "eligible students" and that the parents retain their right to inspect and review their children's education records under FERPA.

Given the number of LEAs potentially involved, SPPO is concerned that the California Department of Education (CDE) played a role, either directly or indirectly, in the adoption of these practices in supporting the recently enacted California Assembly Bill 1955 ("AB 1955"). Therefore, pursuant to its authority under 34 CFR § 99.60 and 20 U.S.C. §1232g(f), this Office is taking appropriate actions to enforce FERPA by conducting an investigation in accordance with, among others, the procedures outlined in 34 CFR §§ 99.64 and 99.65[1].  These sections state, in summary and relevant part:

---

[1] https://studentprivacy.ed.gov/node/548/.

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

Page 2 – Honorable Tony Thurmond

- The Office conducts its own investigation, when no complaint has been filed, to determine whether an educational agency or institution or other recipient of Department funds under any program administered by the Secretary has failed to comply with FERPA. 34 CFR § 99.64(b).

- The Office notifies in writing the complainant, if any, and the educational agency or institution, the recipient of Department funds under any program administered by the Secretary, or the third party outside of an educational agency or institution if it initiates an investigation under § 99.64(b).

- The written notification under this section includes the substance of the allegations against the educational agency or institution, other recipient, or third party; and directs that agency or institution, other recipient, or third party to submit a written response and other relevant information, as set forth in § 99.62, within a specified period of time, including information about its policies and practices regarding education records.

This letter serves as the written notification discussed above, and to provide you the opportunity to submit a written response as requested below.

By letter dated January 31, 2025, the California Justice Center (CJC)[2] informed this Office that, on January 1, 2025, California Assembly Bill 1955 ("AB 1955") took effect, and appears to conflict with FERPA as it recognizes "a nonexistent right of privacy in minors from their parents regarding a child's gender identity at school under the California Constitution," as an exemption that currently does not exist under FERPA. Further, as a result "every public school in California has a policy of denying, or effectively preventing, the parents of students who are in attendance at a school the right to inspect and review the education records of their children."

Additionally, as provided by CJC regarding FERPA, the legislative analysis for AB 1955[3] states:

> While parents/legal guardians have the right to review and amend their students' educational records, courts have recognized that outing a minor to their parents or guardians can violate the minor's constitutional right to privacy, even if the minor is out at school or socially (see Cal. Const., art. I, § 1; C.N. v. Wolf (C.D. Cal. 2005) 410 F.Supp.2d 894, 903; see also Sterling v. Borough v. Minersville (3d Cir. 2000) 232 F.3d 190, 196). By prohibiting school policies that require outing a student to their parents or legal guardians, regardless of the circumstances, this bill would reduce instances where teachers and administrators violate students' right to privacy.

Subsequently, in its letter to this Office, CJC notes the following:

> AB 1955 purports to create a confidential relationship between a child and a school district, and a constitutional right to privacy in a child's identity from that child's

---

[2] California Justice Center, APC is a public interest law firm founded to dismantle government barriers to freedom and prosperity in California. See https://www.justiceca.com/

[3] California Senate Committee on Education, May 24, 2024 Bill Analysis for AB 1955, p. 7

Page 3 – Honorable Tony Thurmond

> parents— which does not exist in the state or federal constitution. AB 1955 classifies providing education records pertaining to a child's gender dysphoria as "outing" a child to the child's parents. If a school is facilitating and accommodating a child's name and gender change at school, however, those documents must be disclosed to a parent upon request under FERPA. Likewise, a child's school work must be produced in response to a FERPA request, even if it discloses a child's new "gender identity."
>
> AB 1955 purports to exempt records pertaining to a child's gender identity from disclosure under FERPA absent consent of the student. FERPA provides no such exemption, and provides full rights to parents before a child turns 18.

Our preliminary analysis of the information provided by CJC in conjunction of our reading of AB 1955, gives this Office reasonable cause to believe that the LEAs throughout California may be violating FERPA as discussed above. As noted in *United States v. Miami University, Ohio State University*, 294 F.3d 797 (6th Cir. 2002), Congress provided in FERPA that "no funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of releasing, or providing access to, any personally identifiable information in education records" except as provided in FERPA. The court explained that legislation, like FERPA, enacted pursuant to the constitutional spending power (art. I, § 8, cl. 1) "is much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions." 294 F.3d at 808, citing *Pennhurst State School and Hospital*. 451 U.S. 1, 17 (1981) (holding that Congress may fix the terms on which it disburses Federal money to the states, and likening the relationship to a contract where the receipt of Federal monies is conditioned upon a state's compliance with Federal laws). That is, "Spending clause legislation, when knowingly accepted by a fund recipient, imposes enforceable, affirmative obligations upon the states." 294 F.3d at 808, *citing Wheeler v. Barrera*, 417 U.S. 402, 427 (1974), modified on another ground, 422 U.S. 1004 (1975). Accordingly, the CDE must ensure that all LEAs comply with FERPA regarding parents' rights to inspect and review any education records maintained by the LEA.

There are a number of enforcement options available to the Department in achieving compliance with FERPA, including withholding further payments, issuing a cease and desist order, and recovering funds. *See* 34 CFR § 99.67 and 20 U.S.C. § 1234c. The court of appeals in *Miami University*, *supra*, also concluded that the United States has the inherent power to sue to enforce conditions imposed under FERPA on the recipients of federal grants. 294 F.3d at 808. However, this Office is committed to working with your office and with LEAs to ensure voluntary compliance with FERPA as provided under § 99.66(c)(2) of the regulations. As part of that effort, please report to me in writing by April 11, 2025, the steps CDE has taken, or will take, including the submission of relevant policy statements or other communications, to ensure that LEAs in California comply with FERPA requirements as described in this letter, or provide a statement and justification explaining why you believe this action is unwarranted.

Page 4 – Honorable Tony Thurmond

In an effort to expedite the processing of this investigation, please email your response to FERPA.ComplaintResponse@ed.gov, including the complaint number in the subject line. In lieu of sending your response electronically, you may send your written response to the following address:

> Student Privacy Policy Office
> U.S. Department of Education
> 400 Maryland Avenue, SW
> Washington, D.C. 20202 – 8520

You may also forward questions specific to this investigation to FERPA.Complaints@ED.Gov, or contact this Office, referencing your complaint number, via phone at 202-260-3887. For general information concerning FERPA and the Office's complaint procedures, please visit our website at https://studentprivacy.ed.gov/.

We look forward to working with you to resolve this issue as expeditiously as possible. Should you have any questions, do not hesitate to contact me directly at the address noted above.

Sincerely,

Frank E. Miller Jr.
Acting Director
Student Privacy Policy Office

# EXHIBIT B



THE SECRETARY OF EDUCATION
WASHINGTON, DC 20202

March 28, 2025

Dear Educators:

By natural right and moral authority, parents are the primary protectors of their children. Yet many states and school districts have enacted policies that presume children need protection from their parents. Often, such policies evade or misapply the Family Educational Rights and Privacy Act (FERPA), turning the concept of privacy on its head to facilitate ideological indoctrination in a school environment without parental interference or even involvement. Going forward, the Department of Education will insist that schools apply FERPA correctly to uphold, not thwart, parents' rights.

COVID-19 opened parents' eyes to the pervasive indoctrination taking place in many classrooms. Families across the country saw gender ideology and critical race theory taught on-screen at their own kitchen tables. When parents understandably demanded answers and transparency, the Biden Administration treated them like criminals, directing the FBI to surveil school board meetings (one of the few places where parents can call for change in their schools) to intimidate parents. Under President Trump's leadership, my Department will no longer passively accept school officials' hostility to parental involvement. The Department stands with parents in exercising their rights to the full extent of the law.

Congress passed FERPA in 1974 to protect children's privacy in a manner that ensures parents can access their children's school records to gain information and insight necessary to act as proper guardians of their children's well-being. FERPA, as well as the Protection of Pupil Rights Amendment (PPRA), were intended to shelter families from invasion of their privacy—not to insulate schools from transparency and accountability to parents. Parents should not have to navigate a complex process to exercise their rights under FERPA or PPRA. Schools should not treat parents as enemies just for wanting to know about the mental and physical health and safety of their own children. Over the last four years, instead of vigorously enforcing these laws, the Biden Administration neglected the flood of complaints it received. The FERPA and PPRA complaint process is currently so overburdened with reports that parents who care deeply about their children's health and educational futures have had no recourse but to sit and wait. There was no obvious attempt by the Biden Administration to address this substantial backlog, which sent a loud and clear message that parental rights were not a priority. Meanwhile, states have taken advantage of this dereliction of government responsibility and installed policies that specifically instruct teachers and administrators to conceal student's critical information in student records from their parents.

The Trump Administration understands that the immense responsibility of raising children belongs to parents, not to the government. That's why I am announcing a revitalized effort to make FERPA and PPRA the source of proactive, effective checks on schools that try to keep parents in the dark. The Department will prioritize clearing the backlog of FERPA complaints so that parents can be confident that the Department is positioned to act on complaints in a timely manner.

Two weeks ago, I had the privilege of sitting down with a courageous group of detransitioners. They told me about their torturous and truly unfortunate experiences which led them down paths that, in many cases, will require lifelong medical care. A common thread among the stories I heard were the dogged efforts that schools took to promote and enable the transitioning of minor children, regardless of their mental state or their vulnerabilities. I repeatedly heard about the lengths schools would go to in order to hide this information from parents.

As any mother would be, I have been appalled to learn how schools are routinely hiding information about the mental and physical health of their students from parents. The practice of encouraging children down a path with irreversible repercussions—and hiding it from parents—must end. Attempts by school officials to separate children from their parents, convince children to feel unsafe at home, or burden children with the weight of keeping secrets from their loved ones is a direct affront to the family unit. When such conduct violates the law the Department will take swift action.

Attached is a letter from the Department's Student Privacy Policy Office (SPPO). This letter reminds educational institutions receiving federal financial assistance that they are obligated to abide by FERPA and PPRA if they expect federal funding to continue. This letter clarifies issues under FERPA that many states and school districts have intentionally muddied. I intend for SPPO's letter to convey my commitment to vigorously enforce important provisions in FERPA and PPRA for the protection of students and parents.

Sincerely,

Linda E. McMahon

Attachment



UNITED STATES DEPARTMENT OF EDUCATION

STUDENT PRIVACY POLICY OFFICE

March 28, 2025

Dear Chief State School Officers and Superintendents:

We are writing you to provide the notification required by 20 U.S.C. § 1232h(c)(5)(C).  The U.S. Department of Education (Department) through its Student Privacy Policy Office (SPPO) is required to inform State educational agencies (SEAs) and local educational agencies (LEAs), as recipients of funds under programs administered by the Department, of their obligations under the Family Educational Rights and Privacy Act (FERPA) (20 U.S.C. § 1232g; 34 CFR Part 99) and the Protection of Pupil Rights Amendment (PPRA) (20 U.S.C. § 1232h; 34 CFR Part 98).

FERPA protects the privacy interests and access rights of parents and students in education records maintained by educational agencies and institutions or by persons acting for such agencies or institutions.  PPRA affords parents and students with rights concerning specified marketing activities, the administration or distribution of certain surveys to students, the administration of certain physical examinations or screenings to students, and parental access to certain instructional materials including ones used as part of a student's educational curriculum.

This letter serves as guidance in conjunction with the Department's annual notification, required by 20 U.S.C. § 1232h(c)(5)(C), which has not substantively changed since it was last issued and is available at:  https://studentprivacy.ed.gov/annual-notices.

In addition to notifying you of your legal obligations, we would also like to take this opportunity to point out several priority concerns identified over the last year.  At the direction of Secretary McMahon, SPPO is taking proactive measures to address the following:

**Priority Concerns**

- ***Parental Right to Inspect and Review Education Records.***  It appears many LEAs may have policies and practices that conflict with the inspect and review provisions afforded parents under FERPA.  Further, some of these informal and formal practices may be occurring at the direction, or minimally with the tacit approval, of their SEAs.  For example, schools often create "Gender Plans" for students and assert that these plans are not "education records" under FERPA, and therefore inaccessible to the parent, provided the plan is kept in a separate file and not as part of the student's "official student record." While FERPA does not provide an affirmative obligation for school officials to inform parents about any information, even if that information is contained in a student's education records, FERPA does require that a school provide a parent with an opportunity to inspect and review education records of their child, upon request.  Additionally, under the current regulatory framework, FERPA does not distinguish between a student's "official student record" or "cumulative file."  Rather, all information, with certain

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

Page 2 – Chief State School Officers and Superintendents

statutory exceptions, that is directly related to a student and maintained by an educational agency or institution, is part of the student's "education records" to which parents have a right to inspect and review.

- ***Safety of Students***.  Additionally, we have received many inquiries from parents concerned about the safety of their children as schools are withholding related information under the auspices of FERPA.  Nothing is more important than the health and safety of our nation's school children.  To that end, schools should not withhold information from parents that identifies other students who have made death threats against their children.  For example, Student A writes a note or school assignment describing an intent, or even a detailed plan, to kill Student B (or multiple other students). To the extent that the education record in question directly relates to both students and the information cannot be segregated and redacted without destroying its meaning, the parents of both students have the right to inspect and review that information.  While the disciplinary sanction imposed on Student A may not be shared with the parents of Student B, unless the sanction directly relates to both students, FERPA does not preclude school officials from communicating to Student B's parents, for example, that responsive action is being taken with respect to a threat assessment or potential disciplinary action.  Nor does FERPA prevent a school from taking actions designed to protect Student B, such as a classroom reassignment to avoid interaction with Student A.  Certain measures a school might impose to protect student safety that directly affect both students may be disclosed to the parents of both students; for example, an order that specifies that Student A must stay 500 feet away from Student B, is a record that relates to both students.  Our guidance called *Addressing Emergencies on Campus* discusses other provisions in FERPA that permit disclosures of personally identifiable information from a student's education records in order to address safety issues in a manner that complies with FERPA. It is available at: https://studentprivacy.ed.gov/resources/addressing-emergencies-campus.

- ***Annual Notification of Rights***.  Many LEAs are not properly notifying parents and eligible students of their rights under FERPA.  A school is not required to notify parents individually but rather is required to provide the notice by any means that are reasonably likely to inform parents of their rights.  These means could include publication in the school activities calendar, newsletter, student handbook, or displayed prominently on the school's website.  *See* 34 CFR § 99.7.

- ***Military Recruiters.***  SPPO also administers the military recruiter provisions of the Elementary and Secondary Education Act (ESEA), which contains certain requirements for LEAs that are the recipients of ESEA funds.  These provisions, as well as the Department of Defense companion law, give military recruiters the same access to secondary students as provided to postsecondary institutions or to prospective employers and require that schools provide student information to military recruiters, when requested, unless the parent has opted out of providing such information.  The information schools are required to provide to military recruiters include student names, addresses, electronic mailing addresses, and telephone listings.  *See* Section 8528 of the ESEA, as amended, 20 U.S.C. § 7908 and 10 U.S.C. § 503(c).

Page 3 – Chief State School Officers and Superintendents

- ***Assurance of Compliance.*** As part of SPPO's fulfillment of the Secretary's priority to take proactive action to enforce FERPA, pursuant to the authority under 20 U.S.C. §1232g(f), 34 CFR §§ 99.60 and 99.62, SPPO is requesting that <u>each SEA submit no later than April 30, 2025</u>, documentation such as "reports, information on policies and procedures, annual notifications, training materials or other information necessary" to provide assurance that the SEA and their respective LEAs are complying with the provisions of FERPA and PPRA, specifically with regard to the priority concerns previously discussed.  In an effort to expedite the processing of this information, please email your response to my attention at <u>SAOP@ed.gov</u>, including the name of the SEA in the subject line.  In lieu of sending your response electronically, you may send your written response to the following address:

  > Student Privacy Policy Office
  > U.S. Department of Education
  > 400 Maryland Avenue, SW
  > Washington, D.C. 20202 – 8520

SPPO is available to assist you with your questions about FERPA, PPRA, and student privacy.  We encourage you to sign up for our monthly student privacy newsletter or submit your questions directly to our student privacy help desk by visiting the "Contact" tab at <u>https://studentprivacy.ed.gov/</u>.

Thank you for the vital work you do every day to safeguard student privacy and create safe and effective learning environments for our students nationwide.

Sincerely,

Frank E. Miller Jr.
Acting Director
Student Privacy Policy Office

# EXHIBIT C



Home / Newsroom / Letters / Letters

**California Department of Education**
**Official Letter**

April 1, 2025

Dear County and District Superintendents and Charter School Administrators:

# Facts to Consider Regarding FERPA and AB 1955

On March 27, 2025, the California Department of Education (CDE) received a letter from the United States Department of Education (ED) Student Privacy Policy Office informing us of an investigation regarding compliance with the Family Educational Rights and Privacy Act (FERPA) in relation to California Assembly Bill (AB) 1955. On March 28, 2025, ED sent an additional communication to all Chief State Schools Officers and all Superintendents of Local Educational Agencies (LEAs) regarding obligations under FERPA.

CDE will respond to these communications on behalf of the California TK-12 public education system as requested by ED. In the meantime, there is an important set of facts that we want to make sure all LEAs are aware of regarding AB 1955 and FERPA.

**AB 1955 does not mandate nondisclosure**. AB 1955 prohibits LEAs from mandating that staff disclose a student's sexual orientation, gender identity, or gender expression to another person without student consent, unless otherwise required by state or federal law. AB 1955 does **not** prohibit LEA staff from sharing any information with parents. Based on the plain language of both laws, there is no conflict between AB 1955 and FERPA, which permits parental access to their student's education records upon request.

Thank you for your hard work on behalf of all students in the State of California. As we at CDE continue to focus on moving the needle for student achievement, I commend all California educators and school staff who are maintaining a local focus on the all-important task of serving our students.

If your LEA or school community is experiencing any interruption of services or impact on educational resources as a result of federal action, please reach out to the relevant program office at the CDE. Our team is here to support you.

Sincerely,

Tony Thurmond

State Superintendent of Public Instruction

Last Reviewed: Tuesday, April 1, 2025

# EXHIBIT D

**California DEPARTMENT OF**
**EDUCATION**

Home / Newsroom / Responses to 2025 Federal Actions & Communications

**California Department of Education**
**Official Letter**

April 11, 2025

Frank E. Miller, Jr.
Acting Director
Student Privacy Policy Office
U.S. Department of Education
400 Maryland Avenue SW
Washington, D.C. 20202-8520
Via email to: FERPA.ComplaintResponse@ed.gov

# RE: Complaint No. 25-0382

Dear Mr. Miller:

I am responding to your letter dated March 27, 2025, to State Superintendent of Public Instruction Tony Thurmond to confirm that there is no conflict between the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g, and Assembly Bill No.1955, 2024 Cal. Stat. ch.95 (AB1955). And, in fact, AB 1955 expressly acknowledges that if federal law required something that conflicted with AB 1955, then federal law would take precedence.

AB1955, known as the "Support Academic Futures and Equality for Today's Youth (SAFETY) Act," became effective on January 1, 2025. AB 1955 added sections220.3(a) and 220.5(a) to the California Education Code, which state, respectively:

An employee or a contractor of a school district, county office of education, charter school, or state special school for the blind or the deaf shall not be required to disclose any information related to a pupil's sexual orientation, gender identity, or gender expression to any other person without the pupil's consent ***unless otherwise required by state or federal law.***

\* \* \*

A school district, county office of education, charter school, state special school for the blind or the deaf, or a member of the governing board of a school district or county office of education or a member of the governing body of a charter school, shall not enact or enforce any policy, rule, or administrative regulation that would require an employee or a contractor to disclose any information related to a pupil's sexual orientation, gender identity, or gender expression to any other person without the pupil's consent, ***unless otherwise required by state or federal law.***

Cal. Educ. Code §§ 220.3(a), 220.5(a) (2025) (emphases added).

The inclusion of express language requiring compliance with state and federal laws necessarily includes compliance with FERPA. Moreover, AB 1955 does not prohibit disclosure about students; it only prohibits schools and school districts from compelling staff to affirmatively disclose without a student's consent. As you acknowledge in your March 28, 2025 letter to Chief State School Officers and Superintendents (https://studentprivacy.ed.gov/sites/default/files/resource_document/file/Secretary_Comb_SPPO_DCL_Annual%20Notice_0.pdf, attached here to as Exhibit 1), FERPA does not impose an affirmative duty on schools to disclose information about a student to parents. There is thus no conflict between the provisions of AB1955 and a parent's right to inspect and review their children's education records, as defined in 20U.S.C. §1232g(a)(4), under FERPA.

As to your request for information on steps the California Department of Education (CDE) has taken or will take related to FERPA compliance, below are samples of relevant guidance and notices CDE has provided to ensure that local educational agencies understand that they can comply with both FERPA and AB 1955:

- CDE has posted guidance about FERPA at https://www.cde.ca.gov/ds/ed/dataprivacyferpa.asp (attached hereto as Exhibit 2), which includes information regarding compliance with FERPA's annual parental notification requirements.

- On January 2, 2025, as a result of AB 1955 going into effect, CDE posted guidance at https://www.cde.ca.gov/ci/pl/ab-1955-sum-of-prov.asp (attached hereto as Exhibit 3). CDE noted in the guidance that AB 1955 does not mandate nondisclosure.

- On April1, 2025, CDE sent a notice to superintendents and administrators (available at https://www.cde.ca.gov/nr/el/le/yr25ltr0401.asp, and attached hereto as Exhibit 4), reminding them that AB1955 prohibits mandatory disclosure, but "does **not** prohibit [local educational agency] staff from sharing any information with parents."  The notice also explained that "there is no conflict between AB1955 and FERPA, which permits parental access to their student's education records upon request."

In sum, there is no conflict between AB1955 and FERPA. AB1955 does not mandate nondisclosure of information, and AB1955's prohibition on mandating disclosure absent student consent is expressly limited by the phrase "unless otherwise required by state or federal law." AB1955 does not contradict parents' rights to request to inspect and review their students' education records under FERPA, even if they contain information related to a student's sexual orientation, gender identity, or gender expression. And CDE's guidance and notices reinforce these points.

Sincerely,

*Signed by*

Len Garfinkel
General Counsel
California Department of Education

cc:

Secretary Brooke L. Rollins
United States Secretary of Agriculture
1400 Independence Ave., S.W.
Washington, DC 20250

Last Reviewed: Friday, April 11, 2025

# EXHIBIT E



Home  /  Newsroom  /  Responses to 2025 Federal Actions & Communications

**California Department of Education**
**Official Letter**

April 11, 2025

Dear County and District Superintendents and Charter School Administrators:

# Further Update Regarding FERPA and AB 1955

The purpose of this letter is to share relevant updates to a communication that we shared with you on April 1, 2025.

As discussed in the California Department of Education (CDE) letter April 1, 2025, "Facts to Consider Regarding FERPA and AB 1955," the U.S. Department of Education (ED) requested a response regarding any potential conflict between FERPA and AB 1955.

Today, the CDE has provided our response to ED, which includes that:

- Based on the plain text of both laws, there is no conflict between FERPA and AB 1955.
- Specifically, there is no conflict between the provisions of AB 1955 and a parent's right to inspect and review their children's education records, as defined in 20 U.S.C. § 1232g(a)(4), under FERPA.
- In addition, AB 1955 includes language requiring compliance with state and federal laws.

A copy of our response is attached, which includes additional resources and guidance that CDE has previously provided to all local educational agencies (LEAs) regarding compliance with both AB 1955 and FERPA. We will be following up separately with you regarding the CDE response to the ED March 28, 2025, additional communication to all Chief State Schools Officers and LEA superintendents regarding compliance with FERPA and the Protection of Pupil Rights Amendment.

We recognize that the frequency and volume of federal actions related to education is disruptive to our schools at this critical time of year for our students. Again, we want to applaud all educators and school staff for their focus on moving the needle for student achievement, as well as for everything that you do to support our students, families, and

school communities. We will continue to keep the field apprised of the CDE responses to federal action. An ongoing list of the CDE 2025 responses to federal actions is maintained on this web page: https://www.cde.ca.gov/nr/fa.

If your LEA or school community experiences disruption or other direct impacts to educational services for students as a result of federal action, please continue to reach out to EdReliefFunds@cde.ca.gov.

Sincerely,

David Schapira
Chief Deputy Superintendent
Chief of Staff
California Department of Education

Last Reviewed: Friday, April 11, 2025

# EXHIBIT F



Home / Newsroom / Responses to 2025 Federal Actions & Communications

**California Department of Education**
**Official Letter**

April 11, 2025

Dear County and District Superintendents and Charter School Administrators:

# Further Update Regarding FERPA and AB 1955

The purpose of this letter is to share relevant updates to a communication that we shared with you on April 1, 2025.

As discussed in the California Department of Education (CDE) letter April 1, 2025, "Facts to Consider Regarding FERPA and AB 1955," the U.S. Department of Education (ED) requested a response regarding any potential conflict between FERPA and AB 1955.

Today, the CDE has provided our response to ED, which includes that:

- Based on the plain text of both laws, there is no conflict between FERPA and AB 1955.
- Specifically, there is no conflict between the provisions of AB 1955 and a parent's right to inspect and review their children's education records, as defined in 20 U.S.C. § 1232g(a)(4), under FERPA.
- In addition, AB 1955 includes language requiring compliance with state and federal laws.

A copy of our response is attached, which includes additional resources and guidance that CDE has previously provided to all local educational agencies (LEAs) regarding compliance with both AB 1955 and FERPA. We will be following up separately with you regarding the CDE response to the ED March 28, 2025, additional communication to all Chief State Schools Officers and LEA superintendents regarding compliance with FERPA and the Protection of Pupil Rights Amendment.

We recognize that the frequency and volume of federal actions related to education is disruptive to our schools at this critical time of year for our students. Again, we want to applaud all educators and school staff for their focus on moving the needle for student achievement, as well as for everything that you do to support our students, families, and

school communities. We will continue to keep the field apprised of the CDE responses to federal action. An ongoing list of the CDE 2025 responses to federal actions is maintained on this web page: https://www.cde.ca.gov/nr/fa.

If your LEA or school community experiences disruption or other direct impacts to educational services for students as a result of federal action, please continue to reach out to EdReliefFunds@cde.ca.gov.

Sincerely,

David Schapira
Chief Deputy Superintendent
Chief of Staff
California Department of Education

Last Reviewed: Friday, April 11, 2025



Home / Newsroom / Responses to 2025 Federal Actions & Communications

**California Department of Education**
**Official Letter**

April 24, 2025

*Via Email*

Frank E. Miller, Jr., Acting Director
Student Privacy Policy Office
U.S. Department of Education
400 Maryland Ave., S.W.
Washington, D.C. 20202-8520
Email: SAOP@ed.gov

# Re: The March 28, 2025 Letter to Chief State School Officers re: FERPA

Dear Mr. Miller:

On March 28, 2025, the U.S. Department of Education (ED) sent a letter to Chief State School Officers and Superintendents requesting that each state educational agency (SEA) submit "reports, information on policies and procedures, annual notifications, training materials, or other information necessary" to provide assurance that the SEA and their respective local educational agencies (LEA) are complying with the provisions of FERPA [Family Education Rights and Privacy Act] and PPRA [Protection of Pupil Rights Amendment], specifically with respect to the priority concerns previously discussed . . . [in that letter]." Those priority concerns included: (1) the parental right to inspect and review education records; (2) student safety; (3) annual notification of rights by LEAs to parents; and (4) access for military recruiters. The California Department of Education (CDE) now provides the following information in response to that request.

First and foremost, all LEAs in California, in order to receive federal funding, make the following assurance to the state:

Each grantee receiving funds under this Act understands the importance of privacy protections for students and is aware of the responsibilities of the grantee under section 444 of the General Education Provisions Act (20 USC 1232g) (commonly known as the "Family Education Rights and Privacy Act of 1974"). (20 USC §7928; PL 114-95, §8548). (See Assurance #9 at https://www.cde.ca.gov/Fg/aa/co/ca24assuranceleaplan.asp.)

The CDE has been and continues to be an active partner with ED to assist LEAs with compliance with all state and federal student privacy laws. Examples of this collaboration include our dedicated CDE Data Privacy webpage1 that features resources for educators, administrators, families, and more. Note that ED's video Student Privacy 101: FERPA for Parents and Students2 is the first resource listed in the section on resources for families. The CDE website also features a FERPA Summary Page3 with more detailed information about parental and student rights and available resources.

In addition to information featured on the CDE website, the CDE has been an active participant in ED's own Privacy Technical Assistance Center's (PTAC) Chief Privacy Officer (CPO) Network, ensuring that CDE staff are regularly updated on student data privacy laws and best practices. This information is shared with CDE staff and

vendors through both facilitated Data Privacy Trainings[4] and self-guided online trainings.

CDE's collaboration with PTAC at the national level includes

the May 2024 Education Management Information Collaborative (EIMAC) presentation PTAC's CPO Network: Leveraging Partners to Bolster & Sustain Privacy[5] that was given collaboratively by CDE staff and PTAC staff.

Examples of the CDE's collaboration with PTAC at the state level to assist LEAs with compliance with FERPA include but are not limited to:

- CDE's monthly participation in PTAC-facilitated Chief Privacy Officer Network activities to remain current on student privacy laws, guidance, and best practices while collaborating with staff in other states;
- Annual attendance of PTAC-sponsored FERPA webinars;
- Annual invitations for PTAC staff to participate in the California IT Educators Conference to present on various FERPA-related topics throughout the conference. This invitation also includes a "Privacy Office Hours" table prominently placed for PTAC staff in the vendor hall so that LEAs can stop by to ask questions and learn about FERPA resources;
- Annual presentations to CDE staff that include discussion of parental rights and school official obligations under FERPA;
- A January 2025 Training on privacy policies, laws (e.g., FERPA, SOPIPA), and best practices given to field representatives from the CDE's Multilingual Support Division[6] and a September 2024 training on privacy policies, laws (e.g., FERPA, SOPIPA), and best practices given for educators in the San Joaquin Delta region of California[7];
- A Psychology of a Scam[8] presentation co-presented by CDE staff and PTAC staff at the 2023 California IT Educators Conference to equip educators with resources to comply with law and avoid scams. Participants were provided with tips and tools they could use to empower others in their school community (students, families, other educators) to avoid scams, know their privacy rights, and comply with law;
- A presentation at the 2020 Computer Using Educators Conference helping California educators understand how to select and use technology in compliance with student privacy laws;[9] and
- A May 2018 Data Breach Simulation Exercise for LEAs in the Gold Country region of California using a template created by PTAC to help educators create a Breach Response Plan as they walk through the steps of a simulated data breach.[10]

In addition to collaborating with PTAC to ensure compliance with FERPA-related issues, CDE staff have been active participants in privacy-related professional learning communities such as the State Education Technology Directors Association,[11] Cybersecurity & Privacy Collaborative, Computer Using Educators,[12] the Future of Privacy Forum's Student Privacy Compass[13] efforts, and the National Center for Education Statistics[14] which has included attending and occasionally presenting at the summer Stats-DC Conferences.

Between training and presentations, CDE's staff monitors and maintains the privacy@cde.ca.gov email box where constituents (both LEAs and families) can submit
privacy and FERPA-related inquiries. The @cdeprivacy Instagram account[15] is also used for sharing FERPA updates and resources. Special Agent Justin Lee of the Sacramento FBI Office has provided periodic presentations to CDE staff to ensure they are current on cybersecurity trends/best practices and laws such as FERPA. Per CDE policy, inclusion of privacy-related laws is a fixture of all new contract reviews, survey reviews, project intake meetings, and Contract Monitor Trainings.

As for the four priority areas listed in your March 28, 2025 letter, as mentioned above, CDE has posted guidance about FERPA at https://www.cde.ca.gov/ds/ed/dataprivacyferpa.asp, which in turn links to ED's Protecting Student Privacy resources at https://studentprivacy.ed.gov, which in turn address each of these priority areas:

1. Parent rights to inspect and review records, see https://studentprivacy.ed.gov/legal-basics.

2. Safety of students, see https://studentprivacy.ed.gov/resources/addressing-emergencies-campus.

3. Annual notification of rights, see https://studentprivacy.ed.gov/annual- notices.

4. Military recruiters, see https://studentprivacy.ed.gov/faq/what-are- requirements-access-military-recruiters-high-school-students.

As for the first priority area -- the parental right to inspect and review education records we have previously discussed this topic in detail in our April 11, 2025 response to your letter dated March 27, 2025 to State Superintendent of Public Instruction Tony Thurmond. In brief, the CDE has informed LEAs that:

- Assembly Bill (AB) 1955 does not mandate nondisclosure of a student's gender identity;
- AB 1955 does not prohibit LEA staff from sharing any student information with parents; and
- There is no conflict between AB 1955 and parents' rights to request to inspect and review their students' education records under FERPA, even if such education records contain information related to a student's sexual orientation, gender identity or gender expression.[16] This lack of any conflict between AB 1955 and parental rights to inspect and review education records was confirmed recently by a federal district court.[17]

In further support of priority areas 1 and 3, the ED-produced FERPA 101 video mentioned above (which is featured on the CDE Data Privacy Web page and in trainings provided by the CDE) explains parental rights to inspect and correct education records and details the annual notification requirements. These rights and requirements are further discussed on the CDE's FERPA Summary Web page, along with discussion of FERPA exceptions such as emergency situations highlighted by priority area 2. As to priority area 4, the CDE offers the Armed Services Vocational Aptitude Battery (ASVAB)[18] to LEAs in compliance with the State Board of Education's (SBE's) directive to expand college and career readiness opportunities. California Education Code Sections 49603(a) codifies requirements that military recruiters receive physical on- campus access.

The CDE continues to cultivate and maintain a robust, multi-pronged approach to supporting compliance with FERPA and other state and federal student privacy laws. The CDE looks forward to continuing to collaborate with ED to support FERPA compliance and safeguard student privacy.

Sincerely,

*Signed by*

Len Garfinkel, General Counsel
California Department of Education

LG:tm

---

1 https://www.cde.ca.gov/ds/ed/dataprivacy.asp

2 https://www.youtube.com/watch?v=nhlDkS8hvMU

3 https://www.cde.ca.gov/ds/ed/dataprivacyferpa.asp

4 https://docs.google.com/presentation/d/1w0KHzKon6CLGu72igcdoGuIpK7i2Mbz4/edit?slide=id.g265de0d89eb_1_10#slide=id.g265de0d89eb_1_10

5 https://docs.google.com/presentation/d/12_q2Ktv2TxXinh7oVVfDSg2OeM40JcztnkPFk8alWXg/edit?usp=sharing

6 https://docs.google.com/presentation/d/1y9tr--9aEbIF0Eew9TnRH-U3gwRqU3DG/edit?slide=id.p1&slide=id.p1

7 https://docs.google.com/presentation/d/1iNMDzC5vipMPf-9BWZb_aoqLU8QRhkg7/edit?slide=id.g265de0d89eb_1_10#slide=id.g265de0d89eb_1_10

8 https://docs.google.com/presentation/d/1sJXIwplnxoREMwvBMl6JEoicS5VXWViK/edit?slide=id.p1#slide=id.p1

9 https://docs.google.com/presentation/d/1g1aLOqQrMhwkAho1M9USXZSb9GjJJjCUElGIvcD6y38/edit#slide=id.p1

10 https://docs.google.com/presentation/d/1MHSaFNk05KMsnMKXR9fMBmcRZpVHNP3yWSWKmjZ80yE/edit#slide=id.p

11 https://www.setda.org

12 https://cue.org/

13 https://studentprivacycompass.org/about/

14 https://nces.ed.gov/programs/slds/edci.asp

15 https://www.instagram.com/cdeprivacy/

16 See, e.g., https://www.cde.ca.gov/nr/fa/

17 *Chino Valley Unified School District v. Newsom*, 2025 WL 1151004 at *7 (E.D. Cal.)

18 See, e.g., https://www.cde.ca.gov/ds/sp/cl/asvabtestfaq.asp.

Last Reviewed: Thursday, April 24, 2025

# EXHIBIT G

California DEPARTMENT OF
EDUCATION

Home / Newsroom / Responses to 2025 Federal Actions & Communications

**California Department of Education
Official Letter**

April 24, 2025

Dear County and District Superintendents and Charter School Administrators:

# Third Update Regarding FERPA

The purpose of this letter is to share additional updates to communications that we shared with you on April 1, 2025, and April 11, 2025.

On March 28, 2025, the U.S. Department of Education (ED) sent a letter to Chief State School Officers and Superintendents requesting that each state educational agency (SEA) submit "reports, information on policies and procedures, annual notifications, training materials or other information necessary" to provide assurance that the SEA and their respective local educational agencies (LEAs) are complying with the provisions of the Family Education Rights and Privacy Act (FERPA) and the Protection of Pupil Rights Amendment.

This week, we have sent a letter to ED detailing how all LEAs in California make assurances to the state of compliance, as well as information about the active CDE engagement to assist LEAs in complying with all state and federal student privacy laws and best practices.

A copy of our response is attached. We will continue to keep the field apprised of the CDE responses to federal actions. An ongoing list of the CDE 2025 responses to federal actions is maintained on this web page: https://www.cde.ca.gov/nr/fa.

Thank you for your continued hard work on behalf of all students in the State of California. As we at CDE continue to focus on moving the needle for student achievement, we again commend all California school staff who are maintaining a local focus on the all-important task of serving our students.

If your LEA or school community experiences disruption or other direct impacts to educational services for students as a result of federal action, please continue to reach out to EdReliefFunds@cde.ca.gov.

Sincerely,

*Signed by*

David Schapira
Chief Deputy Superintendent
Chief of Staff
California Department of Education

Last Reviewed: Thursday, April 24, 2025

# EXHIBIT H



UNITED STATES DEPARTMENT OF EDUCATION

STUDENT PRIVACY POLICY OFFICE

June 3, 2025

Honorable Tony Thurmond
Superintendent of Public Instruction
1430 N Street, Suite 5602
Sacramento, California 95814-5901

Via email: tthurmond@cde.ca.gov

Complaint No. 25-0382
Family Educational Rights
and Privacy Act

Dear Superintendent Thurmond:

On March 27, 2025, the U.S. Department of Education's (Department) Student Privacy Policy Office (Office or SPPO) provided you written notification that an investigation was being initiated to ascertain whether numerous local educational agencies (LEAs) in California may be implementing policies and practices that violate the Family Educational Rights and Privacy Act (FERPA).  20 U.S.C. § 1232g; 34 CFR Part 99.  As stated in that notification, of specific concern was that, given the number of LEAs potentially involved, did the California Department of Education (CDE) play a role, either directly or indirectly, in the adoption of these practices in supporting the recently enacted California Assembly Bill 1955 ("AB 1955").  Accordingly, we requested CDE report to SPPO in writing by April 11, 2025, the steps CDE has taken, or will take, including the submission of relevant policy statements or other communications, to ensure that LEAs in California comply with FERPA requirements as described in our March 27, 2025, letter, or provide a statement and justification explaining why you believe this action is unwarranted.

Subsequently, Mr. Len Garfinkel, General Counsel (Counsel), responded on your behalf via letter dated April 11, 2025.  In that response, Counsel asserted the following, in relevant part:

> There is no conflict between AB 1955 and FERPA.  AB 1955 does not mandate nondisclosure of information, and AB 1955's prohibition on mandating disclosure absent student consent is expressly limited by the phrase "unless otherwise required by state or federal law."  AB 1955 does not contradict parents' rights to request to inspect and review their students' education records under FERPA, even if they contain information related to a student's sexual orientation, gender identity, or gender expression.

Further, Counsel provided the following examples of guidance and notices CDE has issued in clarifying this position:

400 MARYLAND AVE., S.W. WASHINGTON, D.C. 20202-2110

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

Page 2 – Superintendent Tony Thurmond

> CDE has posted guidance about FERPA at www.cde.ca.gov/ds/ed/dataprivacyferpa.asp, which includes information regarding compliance with FERPA's annual parental notification requirements.
>
> On January 2, 2025, as a result of AB 1955 going into effect, CDE posted guidance at www.cde.ca.gov/ci/pl/ab-1955-sum-of-prov.asp.  CDE noted in the guidance that AB 1955 does not mandate nondisclosure.
>
> On April 1, 2025, CDE sent a notice to superintendents and administrators (available at https://www.cde.ca.gov/nr/el/le/yr25ltr0401.asp), reminding them that AB 1955 prohibits mandatory disclosure, but "does **not** prohibit [local educational agency] staff from sharing any information with parents."  The notice also explained that "there is no conflict between AB 1955 and FERPA, which permits parental access to their student's education records upon request."

SPPO acknowledges and appreciates the timely response to our initiation letter, including your April 1, 2025, memorandum.  However, in reviewing these references, there appears to be no specific reference to "gender support plans."  Our Office is aware that parental advocacy groups, such as the "Moms for Liberty," have expressed concern that school districts in California continue to develop these types of plans without parental awareness.  For example, this group has stated: "Across 6 districts serving nearly 158,000 total students that provided data from the 2023-2024 school year, more than 300 children were placed on 'gender support plans' or had their names or pronouns modified in school systems."   While we have not independently validated this data, we have had conversations that led to us to have similar concerns regarding how "gender support plans" are shared with parents at the district level.

In determining whether the facts of a case indicate that a violation of FERPA occurred, this Office considers all documentation acquired through the investigatory process, in conjunction with the relevant statutory and regulatory requirements and the Department's interpretation of those requirements.  That said, to better inform that determination, consistent with the provisions at of 34 CFR § 99.66(a), I am requesting the submission of further written information to address concerns regarding gender support plans.  Specifically, CDE is requested to provide the following:

1) An additional notice to superintendents and administrators, like the one issued on April 1, 2025, reminding them that "gender support plans" are typically education records under FERPA, and therefore also subject to review and inspection by parents of students, and

2) A plan of action demonstrating how CDE will ensure LEAs are complying with the provisions of FERPA as related to the issues discussed in the two notices discussed in 1) above given the context of AB 1955.

Page 3 – Superintendent Tony Thurmond

To expedite the processing of this investigation, please respond in writing by close of business June 9, 2025, including documentation addressing these two issues or provide a statement with justification explaining why you believe this action is unwarranted.  You may email your response to FERPA.ComplaintResponse@ed.gov, including the complaint number in the subject line. In lieu of sending your response electronically, you may send your written response to the following address:

> Student Privacy Policy Office
> U.S. Department of Education
> 400 Maryland Avenue, SW
> Washington, D.C. 20202 – 8520

Please forward any questions to my attention at FERPA.Complaints@ED.Gov.  We look forward to our continued partnership as we work to resolve the investigation as quickly possible.

Sincerely,

Frank E. Miller Jr.
Acting Director
Student Privacy Policy Office

# EXHIBIT I



# CALIFORNIA DEPARTMENT
# OF EDUCATION

**TONY THURMOND**
STATE SUPERINTENDENT OF
PUBLIC INSTRUCTION

1430 N STREET, SACRAMENTO, CA 95814-5901 • 916-319-0800 • WWW.CDE.CA.GOV

June 9, 2025

*Via email*

Frank E. Miller, Jr.
Acting Director
Student Privacy Policy Office
U.S. Department of Education
400 Maryland Avenue SW
Washington, D.C. 20202-8520
FERPA.ComplaintResponse@ed.gov

RE: Complaint No. 25-0382

Dear Mr. Miller:

I am responding to your letter dated June 3, 2025, to State Superintendent of Public Instruction Tony Thurmond, in which you stated that "there appears to be no specific reference to 'gender support plans'" in the California Department of Education's (CDE) recent communications to local educational agencies (LEA) about the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g, and Assembly Bill No. 1955, 2024 Cal. Stat. ch. 95 (AB 1955). You requested that the CDE, by today's date: (1) notify LEAs that "gender support plans are typically education records under FERPA," and (2) provide a "plan of action" as to how the CDE will ensure that LEAs comply with FERPA in relation to issues of gender identity disclosure, or provide a justification as to why these two actions are unwarranted.  As explained herein, the CDE chooses the latter.

As noted below, the CDE has previously responded to both your March 27, 2025, complaint investigation letter and, separately, to your March 28, 2025, letter to all chief state school officers, which identified written "gender plans" as an area of interest/concern.

As to the first request, the CDE's April 11, 2025, response letter acknowledged your concerns about FERPA and gender support plans as demonstrated by the three examples of CDE communications that help ensure that LEAs understand that they can comply with both FERPA and AB 1955. These included general guidance regarding rights and obligations under FERPA at https://www.cde.ca.gov/ds/ed/dataprivacyferpa.asp; guidance summarizing AB 1955 dated January 2, 2025, at https://www.cde.ca.gov/ci/pl/ab-1955-sum-of-prov.asp; and guidance regarding the interaction of AB 1955 with FERPA dated

Frank E. Miller, Jr.
June 9, 2025
Page 2

April 1, 2025, at https://www.cde.ca.gov/nr/el/le/yr25ltr0401.asp.  In its April 1, 2025 guidance document, the CDE specifically instructs that "AB 1955 does not mandate nondisclosure [of student records]" and that "AB 1955 does not prohibit LEA staff from sharing any information with parents" regarding their student's gender identity or sexual orientation. To that same end, the CDE noted in its April 11, 2025, letter that: "AB 1955 does not contradict parents' rights to request to inspect and review their students' education records under FERPA, *even if they contain information related to a student's sexual orientation, gender identity, or gender expression."*  (Emphasis in italics supplied.) Also on April 11, 2025, the CDE sent a cover letter to all of California's LEAs, which attached a copy of that April 11, 2025 letter. The CDE's cover letter to LEAs, and the attachment, are posted at www.cde.ca.gov/nr/fa.

On April 24, 2025, in response to your March 28, 2025, letter to all chief state school officers, we sent you further detailed information about how the CDE supports LEAs in complying with FERPA. We noted that nothing in FERPA requires a state educational agency such as the CDE to provide LEAs with guidance or technical assistance or otherwise oversee LEA compliance with FERPA, but that nevertheless all California LEAs, to receive federal funding, make the following assurance to the state:

> Each grantee receiving funds under this Act understands the importance of privacy protections for students and is aware of the responsibilities of the grantee under section 444 of the General Education Provisions Act (20 USC 1232g) (commonly known as the "Family Education Rights and Privacy Act of 1974"). (20 USC §7928; PL 114-95, §8548). (See Assurance #9 at www.cde.ca.gov/Fg/aa/co/ca24assuranceleaplan.asp.)

In our April 24, 2025, letter, responsive to issues raised, including with respect to "gender plans," we informed you that the CDE has informed California's LEAs that "There is no conflict between AB 1955 and parents' rights to request and review their students' education records under FERPA, even if such education records contain information related to a student's sexual orientation, gender identity, or gender expression."  In that letter, we also noted that a federal district court recently held that there is no conflict between FERPA and AB 1955. See *Chino Valley Unified School District v. Newsom*, 2025 WL 1151004 at *7 (E.D. Cal., Apr. 17, 2025). Also on April 24, 2025, the CDE sent a cover letter to all of California's LEAs, which attached a copy of that April 24, 2025 letter. The CDE's cover letter to LEAs, and the attachment, are posted at www.cde.ca.gov/nr/fa.

The CDE is not aware of any legal authority that tasks a state educational agency under FERPA with issuing legal opinions to LEAs as to how to apply FERPA to particular factual situations, such as determining whether a particular document constitutes an "educational record" (as defined in FERPA) in a particular circumstance.  The guidance and communications we have issued to LEAs in response to your previous requests encompassing this topic sufficiently apprise them of their obligations under FERPA.

Frank E. Miller, Jr.
June 9, 2025
Page 3

As to the second request, the CDE is likewise unaware of any legal authority that tasks a state educational agency with developing a state plan relating to FERPA compliance. As such, the request that the CDE develop such a plan in relation to issues of gender identity disclosure, specifically, is without authority.

Nevertheless, the CDE continues to support LEA compliance with FERPA. The CDE notes that the examples set forth in its April 11, 2025, and April 24, 2025, letters showing how CDE assists LEAs with FERPA compliance, as well as the CDE's sharing of the April 11, 2025, and April 24, 2025 letters with California's LEAs, demonstrate the CDE's support of FERPA compliance by LEAs.

Sincerely,


/s/ Len Garfinkel
LEN GARFINKEL, General Counsel

# EXHIBIT J



UNITED STATES DEPARTMENT OF EDUCATION

STUDENT PRIVACY POLICY OFFICE

January 28, 2026

Honorable Tony Thurmond
Superintendent of Public Instruction
1430 N Street, Suite 5602
Sacramento, CA 95814-5901

Via email: tthurmond@cde.ca.gov

Complaint No. 25-0382
Family Educational
Rights and Privacy Act

Dear Superintendent Thurmond:

This letter is to inform you of the outcome of the investigation conducted by the U.S. Department of Education (Department), Student Privacy Policy Office (Office or SPPO), into the California Department of Education (CDE). On March 27, 2025, SPPO provided you written notification that an investigation was being initiated to ascertain whether numerous local educational agencies (LEAs) in California may be violating the Family Educational Rights and Privacy Act (FERPA or Act). 20 U.S.C. § 1232g; 34 C.F.R. Part 99. As stated in that notification, there is reason to believe the CDE facilitated and promoted the adoption of policies and practices that violate FERPA.

FERPA is a Federal law that protects the privacy of students' education records. FERPA affords parents the right to have access to their children's education records, the right to seek to have the records amended or corrected, and the right to control the disclosure of information from the records subject to FERPA's exceptions. Under FERPA, a school must generally provide a parent with an opportunity to inspect and review his or her child's education records within 45 days of the receipt of a request. Recipients of Federal financial assistance from the Department are subject to these laws and regulations and to the Secretary's enforcement authority.

In our investigation, SPPO examined whether the CDE's relevant policies, guidance, and other actions permit, direct, instruct, or require LEAs to violate FERPA, ultimately leading to the intentional and unlawful suppression of student records from parents.

SPPO has concluded that certain CDE policies and practices, which are discussed below, considered in their totality, create powerful state-directed pressure for LEAs to adopt practices that are likely to lead to—and have led to—FERPA noncompliance. Our office has concluded that, if the CDE continues on this course, FERPA violations will continue to occur and the statewide

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

Page 2 – Superintendent Tony Thurmond

hostility toward transparent communication with parents will be reinforced under the recently enacted 2024 California Assembly Bill 1955 ("AB 1955"), further emboldening school officials to hide student records from parents regardless of Federal law.

Our Office concludes that the policies and practices outlined in more detail below have systematically fostered a legal environment where schools maintain, or feel obligated by law to maintain, information about a student's "gender identity" and "gender expression" that is actively withheld from parents. In many cases LEAs do so by maintaining documentation, such as "gender support plans," not as part of the cumulative record open to inspection by parents, but as "unofficial records" to which the school may not provide access upon a parent's request. This practice violates the federally recognized right of parents to inspect and review all education records related to their minor children.

In our correspondence during SPPO's investigation, the CDE has tried to dodge compliance with FERPA, coerced LEAs to violate FERPA, and refused to take the necessary steps to confirm compliance with its LEAs. Therefore, SPPO finds the CDE to be non-compliant with FERPA. As further explained below, the CDE is the primary administrator of a majority of Federal education funds to the State's LEAs; it is the duty of the CDE to ensure the LEAs are not in violation of Federal laws.

## I.    Legal Background

Congress passed the Family Educational Rights and Privacy Act in 1974 "to assure parents of students access to their educational records." *Frazier v. Fairhaven Sch. Comm*, 276 F.3d 52, 67 (1st Cir. 2002) (alteration and citation omitted); *see also Manco v. St. Joseph's Univ.*, 350 F.R.D. 62, 68 (E.D. Pa. 2025) (noting that FERPA was enacted "for the purpose of ensuring parents' access to their children's educational records"). FERPA achieves that goal through conditioning Federal funding on certain requirements. In particular,

> No funds shall be made available under any applicable program to any educational agency or institution which has a policy of denying, or which effectively prevents, the parents of students who are or have been in attendance at a school of such agency or at such institution, as the case may be, the right to inspect and review the education records of their children.

20 U.S.C. § 1232g(a)(1)(A). FERPA also requires educational agencies and institutions to "effectively inform[] the parents of students … of the rights accorded them by this section." *Id.* § 1232g(e).

FERPA defines "education records" as, with certain narrow exceptions, "those records, documents, and other materials which[] contain information directly related to a student," and "are maintained by an educational agency or institution or by a person acting for such agency or institution." *Id.* § 1232g(a)(4)(A); *accord* 34 C.F.R. § 99.3(a); *Owasso Indep. Sch. Dist. No. I-011 v. Falvo*, 534 U.S. 426, 429 (2002). The "plain meaning" of this provision "reveals that Congress intended for the definition to be broad in scope." *Belanger v. Nashua Sch. Dist.*, 856 F. Supp. 40, 48 (D.N.H. 1994). In other words, "Congress made no content-based judgments with regard to its

Page 3 – Superintendent Tony Thurmond

'education records' definition." *United States v. Miami Univ.*, 294 F.3d 797, 812 (6th Cir. 2002). For that reason, "FERPA does not exempt from its disclosure obligation education records that deal with preferred names and pronouns." *Ricard v. USD 475 Geary Cnty.*, 2022 WL 1471372, at *7 (D. Kan. May 9, 2022).

FERPA provides that the Secretary of Education "shall take appropriate actions to enforce this section and to deal with violations of this section, in accordance with this Act." 20 U.S.C.. § 1232g(f). The Act authorizes the Secretary to "terminate assistance" when she "finds there has been a failure to comply with this section" and she "has determined that compliance cannot be secured by voluntary means." *Id.*

The CDE is currently, and has been for many years, a recipient of Federal financial assistance from the Department. Approximately $4.8 billion remains available for drawdown by the CDE, including both discretionary grants and formula grants. In turn, the CDE distributes Federal funding to the LEAs in the State.

## II.    Findings

### A) There is a Pattern and Practice of California Schools Withholding Education Records from Parents

California's LEAs receive Federal funds through the CDE and are "educational agenc[ies]" and "institution[s]" under FERPA. 20 U.S.C. §1232g(a)(1)(A). Accordingly, they are prohibited from having a "policy of denying" or "effectively prevent[ing]" parents from "inspect[ing] and review[ing] the education records of their children." *Id.* SPPO's investigation has revealed that multiple LEAs have failed to comply with that requirement.

#### 1.    Districts across California have policies or practices designed to withhold "gender support plans" and similar documents from parents.

SPPO's investigation revealed a long history across the state where districts and schools have attempted to withhold or hide information from parents. In particular, districts and schools appear to take great pains to withhold so-called "gender support plans" and similar documents from parents. "Gender support plans" are forms (oftentimes based off a universal form provided by the organization "Gender Spectrum") that students fill out with school administrators to lay out a plan on how to "transition" and maintain the "new identity" of the student within the school system, with or without parental knowledge or consent.

The persistent efforts by schools across the state to hide such matters from parents cannot be squared with FERPA. From the beginning, these "gender support plans" are shrouded in secrecy, with the aim of excluding parents from involvement or even knowledge. A recent article highlights how Freedom of Information Act (FOIA) requests of California districts show at least 300 children were placed on gender support plans, many without parental knowledge.[1] Those

---

[1] https://dailycaller.com/2025/04/15/exclusive-blue-state-schools-facing-trump-admin-investigation-helped-hundreds-of-kids-change-their-gender-last-year/

Page 4 – Superintendent Tony Thurmond

numbers are borne out by the numerous lawsuits brought by parents alleging that their children were pressured to "transition" by school officials absent any parental awareness. *See, e.g.*, *Regino v. Staley*, 133 F.4th 951 (9th Cir. 2025) (Chico Unified School District's policy); *Konen v. Caldeira*, No. 5:22-cv-5195 (N.D. Cal. filed Sept. 12, 2022) (Spreckels Union School District's policy).

Certain schools' formal materials in fact evince a plan for preventing parents from accessing their children's education records, if those records involve their children's "gender identity." For instance, in Mt. Diablo Unified School District, the gender support plan document permits the student to specify that the plan be stored either in the student's cumulative file, a locked cabinet or elsewhere. Suggestively, the form indicates that only the cumulative file is accessible to parents.[2] For another, Mountain View-Los Altos High School District's Gender Identity and Access Administrative Regulation Policy states that "[i]n the event that a student identifies as transgender, but is unable to obtain consent from a parent or legal guardian, a school administrator shall meet with the student to discuss how the student would like to be addressed at school and implement a plan to ensure that the student's privacy is protected."[3] Berkeley Unified School District's "Gender Support Plan" includes questions asking if parents are aware and supportive of the student's gender status, and, "If not, what considerations must be accounted for in implementing this plan?" It subsequently asks, "Can the student's name/gender marker be reflected in the SIS [Student Information Software]?,"[4] suggesting that certain name and "gender identity" changes would be hidden from parental access and not placed in the student's educational records.

The recent case of *Mirabelli v. Olson*, 691 F. Supp. 3d 1197 (S.D. Cal. 2023), illustrates the lengths school districts in California will go to conceal information from parents. In that case, two teachers in the Escondido Unified School District challenged a school policy under which "a teacher ordinarily may not disclose to a parent the fact that a student identifies as a new gender, or wants to be addressed by a new name or new pronouns during the school day." *Id.* at 1203. The litigation revealed letters from the district's attorneys which indicated that the school's policy "require[s] [teachers] to not share a student's gender identity status with their parent or guardian without the student's permission"—even if a "parent directly asks [the teachers] to reveal a student's gender identity." *Id.* at 1206. One teacher stated in her declaration to the court that the State has mandated teachers to withhold information or mislead parents regarding a student's "gender identity," which she views as a violation of her religious faith. She states, "I understand that California requires me and all other school staff to accept a student's statement of their gender identity and immediately begin treating them as a member of the opposite-sex, regardless of whether their parents consent or even know. And, if the child tells me that he does not want his parents to know about this, then I must keep it from them. As a requirement for employment by the California school system, this is a severe burden on my religious beliefs."

The picture is similarly bleak off the page and in practice. For instance, a leaked video from a training session in Claremont Unified School District showed the Director of Educational

---

[2] https://drive.google.com/file/d/12J6Vq_jluKakLsPlqGSeykkJRywGG8H6/view
[3] https://docs.google.com/document/d/1YBUoYVtfLfJ1w0cgA_zNoPwkY-j8oFOT/edit?tab=t.0
[4] https://www.berkeleyschools.net/wp-content/uploads/2017/11/Gender-Support-Plan-and-Gender-Transition-Plan-from-Gender-Spectrum.pdf

Page 5 – Superintendent Tony Thurmond

Services instructing teachers to actively hide students' "gender identities" from parents.[5] In particular, the Director states that "[a]ll students have the right to privacy," and "the right to keep their gender status private, even from their parents"—such that the school "cannot disclose information without the student's explicit permission."[6] Similarly, at a video training session hosted by Transforming Family Spotlight Q&A, the Assistant Superintendent of Glendale Unified School District instructed school staff watching the video to keep "gender support plans" in a separate desk drawer in order to keep parents from discovering it.[7]

Our investigation also revealed how numerous schools have used their data management software system (Aeries) to conceal information from parents. A 2024 public records request fulfillment from Roseville Joint Union High School District exposed a number of email exchanges dating back to 2022 between teachers, counselors, registrars, and principals throughout the district. These emails discussed whether software systems could be used to change names of students without the parents knowing and when to use different student names in front of parents.[8] In one of these email exchanges, from Oakmont High School, a guidance counselor directed staff to refer to a student with a different name than the name used in the current Aeries system and with parents. Teachers discussed hiding the student's name change from the student's parents—even though some faculty expressed concern that they were being directed to communicate dishonestly with parents about students' "gender identity." The emails further discussed whether it would be possible to change students' names and "genders" in the Aeries system without that change becoming visible to the parents.[9]

Our investigation also uncovered numerous posts between 2021 and 2024 on Aeries' online chat portal from school software administrators on various campuses asking Aeries to create features to hide student name changes and pronoun changes from parents. Over the years, California educators and administrators from districts around the state endorsed these requests, agreeing that Aeries should provide additional capabilities to hide student email addresses from parents, as well as methods for overriding the Parent Portal and modifying what parents can see. They also suggested that informing parents of a student's "gender identity" could violate State law. As one administrator explained: "With AB1266 and transgender student privacy, we are running into issues with confidentiality in Aeries. For example, a female transgender student wants to go by their preferred name and not share with a legal parent/guardian. However, when the preferred name is entered in Aeries as well as the legal name, the preferred name is showing up on all parent communication and parent portal. Can we find a way to have the preferred name [not] listed on all?"[10]

---

[5] https://x.com/libsoftiktok/status/1829600615980495073
[6] *Id.*
[7] https://www.youtube.com/watch?v=LEc0m02QgG4
[8] California Public Records Request response, Batch 1 4864-4166-0369. Relevant to request sent May 20, 2024 by Lozana Smith Attorneys at Law.
[9] *Id.*
[10] https://archive.ph/07iSQ

Page 6 – Superintendent Tony Thurmond

In a 2024 Chula Vista Elementary School District Board meeting, a district representative expressed concern that when a school changes a student's "gender identity" in the online system and a parent goes into that system to register them for classes, the parent would see the alternative "gender" for their child. The representative also mentioned that multiple other districts shared these fears. Assistant Superintendent Sharon Casey responded: "In our system, when there is a student who self-identifies with a different name, there's a code that's put on that file so that parents don't have access. And so it's coded a separate way for us in our system."[11]

By far the most prevalent strategy schools have used to hide information from parents is to keep bifurcated records—an "official" record that will be disclosed upon request, and an "unofficial" record that the school will go to great lengths to keep hidden. As recently as September 2025, the CDE championed polices such as the Lake Tahoe Unified School District "Right to Privacy" policy that provided a roadmap for concealing information from parents.[12] That policy provided that appropriate strategies for preventing "unauthorized disclosure of a students' private information" may include "keeping a student's unofficial record separate from the official record" and stated that while a student's "official record" requires legal documentation for name changes and parental authorization for "gender changes," the student's "unofficial record" may be changed without such documentation or authorization.[13] Unsurprisingly, many schools in California continue to maintain similar polices:

- The San Francisco Unified School District's Administrative Regulation 5145.4 lists "keeping a student's unofficial record separate from the official record" as a "strateg[y]" for keeping "[a] student's intersex, nonbinary, transgender or gender-nonconforming status" private.[14]

- Mt. Diablo Unified School District provides children the option of deciding where to store their gender support plans. According to the form, only the cumulative file is accessible to parents.[15]

- Alameda Unified School District directs its personnel that they "should not disclose information that may reveal a student's transgender status or gender nonconforming presentation to others, including parents and other school personnel, unless legally required to do so or unless the student has authorized

---

[11]See "4/17/2024 – English - Chula Vista Elementary School District Board Meeting," 6:01:00-6:02:40, https://www.youtube.com/live/SI5XqncWV6Y?si=aFaWgSq0FCoa57bW&t=21663
[12] https://web.archive.org/web/20250905074014/https://www.cde.ca.gov/ci//pl/c1h.asp
[13] Lake Tahoe Unified School District Board Policy Manual. Regulation 5145.3: Nondiscrimination/Harassment states: "However, when proper documentation or authorization, as applicable, is not submitted with a request to change a student's legal name or gender, any change to the student's record shall be limited to the student's unofficial records such as attendance sheets, report cards, and school identification." on June 1, 2025, Lake Tahoe USD amended its policy as documented in CSBA meeting notes:
https://simbli.eboardsolutions.com/Meetings/Attachment.aspx?S=36030287&AID=1216715&MID=44542
https://simbli.eboardsolutions.com/Policy/ViewPolicy.aspx?S=36030287&revid=J8a1zXjE9WQmWgplusThqlqplusw%3d%3d&PG=6&st=5145.3&mt=Exact
[14]https://www.sfusd.edu/know-your-rights/discrimination-your-school/administrative-regulation-nondiscriminationharassment-intersex-nonbinary-transgender-and-gender
[15] https://drive.google.com/file/d/12J6Vq_jluKakLsPlqGSeykkJRywGG8H6/view

Page 7 – Superintendent Tony Thurmond

such disclosure."[16] To that end, the district "maintain[s] a mandatory permanent pupil record ('official record') that includes a student's legal name and legal gender," but that may differ from "other school records or documents."[17]

- Berkeley Unified School District "maintain[s] a mandatory permanent pupil record ('official record') that includes a student's legal name and legal gender." But it specifically notes in its policy that it "is not required to use a student's legal name and gender on other school records or documents."[18]

- Sacramento City Unified School District emphasizes a "distinction between school records and legal documents" as a tool to protect "privacy for transgender and gender non-conforming students." According to district policy, "[t]ransgender and gender non-conforming students have the right to have their lived name and/or gender marker and/or gender pronouns reflected on all (non-legal) school physical records and documents."[19]

- In trainings provided to educators around the State of California, Ventura County Associate Superintendent and Las Virgenes Unified School District indicated that schools' "obligation regarding whether and when to change a student's name and/or gender in their records depends on the type of record it is under state law, not federal law." For that reason, the trainings "focus[ed] on the categories of records described in state law, not FERPA."[20]

**2. There is no carve-out from FERPA for "gender support plans" and similar documents.**

These practices cannot be reconciled with FERPA. As mentioned above, FERPA makes "no content-based judgments with regard to its 'education records' definition." *Miami Univ.*, 294 F.3d at 812. With few exceptions, FERPA defines an education record as "records, files, and documents" that "(i) contain information directly related to a student; and (ii) are maintained by an educational agency or institution or by a person acting for such agency or institution." 20 U.S.C. § 1232g(a)(4). A school document or record that chronicles a student's name change or gender confusion necessarily contains "information directly related" to the student. *Id.* And if the school "keep[s]" or "preserve[s]" those records, whether in a "filing cabinet" or a "permanent secure database," then the school "maintain[s]" it. *Owasso Indep. Sch. Dist. No. I-001*, 534 U.S. at 432-

---

[16] See "Privacy" subsection of Student Rights and Protections" section, https://www.alamedaunified.org/departments/student-support-services/ausd-lgbtq-round-table.

[17]*Ibid.* See "Official Records" subsection of "Student Rights and Protections" section.
[18]https://www.berkeleyschools.net/wp-content/uploads/2024/11/BUSD-Transgender-and-Gender-Nonconforming-Students-BP-5159-1.pdf
[19]https://simbli.eboardsolutions.com/Policy/ViewPolicy.aspx?S=36030403&revid=LmvTpyVHyrhxBWEAtBRzRw==&ptid=amIgTZiB9plushNjl6WXhfiOQ==&secid=9slshUHzTHxaaYMVf6zKpJz3Q==&PG=6&IRP=0&isPndg=false
[20] https://www.sbcselpa.org/wp-content/uploads/2022/02/12-6-21_JPA_Agenda.pdf

Page 8 – Superintendent Tony Thurmond

33; *see also Ricard*, 2022 WL 1471372, at *7 ("FERPA does not exempt from its disclosure obligations education records that deal with preferred names and pronouns.").

Labeling some records "official" and other records "unofficial" does not take any such records outside the FERPA obligation. Whether information "directly relates" to a student or is "maintained" by an educational institution does not turn on how the school decides to label the record after the fact, or on how formal those records are.

That FERPA has no "unofficial records" exception is confirmed by the fact that FERPA contains express categories of records that fall outside its "education records" definition. In particular, FERPA specifies that "education records" does not include:

(i)     records of instructional, supervisory, and administrative personnel and educational personnel ancillary thereto which are in the sole possession of the maker thereof and which are not accessible or revealed to any other person except a substitute;

(ii)    records maintained by a law enforcement unit of the educational agency or institution that were created by that law enforcement unit for the purpose of law enforcement;

(iii)   in the case of persons who are employed by an educational agency or institution but who are not in attendance at such agency or institution, records made and maintained in the normal course of business which relate exclusively to such person in that person's capacity as an employee and are not available for use for any other purpose; or

(iv)    records on a student who is eighteen years of age or older, or is attending an institution of postsecondary education, which are made or maintained by a physician, psychiatrist, psychologist, or other recognized professional or paraprofessional acting in his professional or paraprofessional capacity, or assisting in that capacity, and which are made, maintained, or used only in connection with the provision of treatment to the student, and are not available to anyone other than persons providing such treatment, except that such records can be personally reviewed by a physician or other appropriate professional of the student's choice.

20 U.S.C. § 1232g(a)(4)(B). In other words, Congress knew how to make exceptions from its "broad" definition of "education records." *Clark Cnty. Sch. Dist.*, 564 P.3d at 866. There is thus no room to read an additional one into FERPA's plain text. *See Persian Broad. Serv. Global, Inc. v. Walsh*, 75 F.4th 1108, 1113 (9th Cir. 2023) ("When a provision contains express exceptions, the familiar judicial maxim *expression unius eest exclusion alterius* counsels against finding additional, implied, exceptions."); *Belanger*, 856 F. Supp. at 48 (refusing to "imply any exclusions to 'education records'").

To the extent any of the above schools' policies require that "education records" be withheld from parents—or "effectively prevent[]" parents from accessing such records—they are in violation of FERPA's obligations. 20 U.S.C. § 1232g(a)(1)(A).

Page 9 – Superintendent Tony Thurmond

**B) The Department Finds the California Department of Education is Noncompliant With FERPA and its Implementing Regulations**

California and the CDE are not bystanders in these schools' failure to comply with FERPA. To the contrary, California's laws, guidance, and actions have created an environment where schools in the state are effectively forced to conceal education records from parents, for fear of reprisal from the State. For that reason, the Department finds that the CDE has caused schools in the state to violate FERPA.

**1.  FERPA requires California to withhold Federal funds from its educational agencies or institutions that violate FERPA's record and review requirements.**

California and the CDE receive Federal funds from the United States and then divvies those funds to applicable educational agencies or institutions. California, by making available Federal funds to districts violating FERPA record requirements, itself violates FERPA.

FERPA is clear: "*No funds shall* be made available under any applicable program to any educational agency or institution which has a policy of denying, or which effectively prevents, the parents of students who are or have been in attendance at a school of such agency or at such institution, as the case may be, the right to inspect and review the education records of their children." 20 U.S.C. § 1232g(a)(1)(A) (emphasis added); *accord id.* § 1232g(a)(1)(B) (similar). Yet California is making the applicable Federal funds available to institutions that are violating FERPA's record and review requirements.

**2.  California's coercion of school districts to violate FERPA's record requirements itself violates FERPA.**

**a.    California's guidance and communications to schools are in tension with FERPA.**

FERPA has been the law of the land since 1974. And, at bottom, "FERPA is a law that specifically *empowers* parents to receive information about their minor students." *Ricard*, 2022 WL 1471372, at *7. It "mandates [school districts] to make education records available to parents upon request—whether the child wants their parents to have the records or not." *Id.*

California's communications to schools have long contradicted FERPA's clear commands. These communications often come in the form of guidance, setting out a putative interpretation of State law that warns schools not to share information with parents. These State laws include:

- the California State Constitution, which provides for an "inalienable right[]" to "enjoy[] … privacy." Calif. Const. art. I, § 1.

- Education Code Section 220, which provides that "[n]o person shall be subjected to discrimination on the basis of … gender, gender identity, gender expression," or "sexual orientation." Calif. Edu. Code § 220.

- AB 1266, which provides, among other things, that "[a] pupil shall be permitted to participate in sex-segregated school programs and activities, including athletic teams and competitions, and use facilities consistent with his or her gender identity, irrespective of the gender listed on the pupil's records." Calif. Edu. Code § 221.5(f).

Page 10 – Superintendent Tony Thurmond

- AB 1955, which provides, among other things, that "[a]n employee or a contractor of a school district, county office of education, charter school, or state special school for the blind or the deaf shall not be required to disclose any information related to a pupil's sexual orientation, gender identity, or gender expression to any other person without the pupil's consent unless otherwise required by state or federal law." Calif. Education Code § 220.3. In enacting AB 1955, the California legislature specified that the new provision "does not constitute a change in, but is declaratory of, existing law." *Id.*

In expounding on those sources of law, California's guidance and communications to schools have consistently discouraged schools from sharing information about students' "gender identity" with parents absent the student's consent, without any seeming exception for FERPA compliance. For example, in a recent legal alert, the California Attorney General indicated that "[f]orced disclosure policies" violate "students' California constitutional right to privacy with respect to how and when to disclose their gender identity."[21] That legal alert also declared that "[f]orced disclosure policies also run afoul of Education Code section 220's and Government Code section 11135, subdivisions (a)'s and (c)'s express commands not to discriminate on the basis of gender identity and gender expression."[22] The California Attorney General also continues to post a notice on his website declaring that "[y]our school, whether public or private, doesn't have the right to 'out' you as LGBTQ+ to anyone without your permission, including your parents. Under the California and U.S. constitutions, you have a protected right to privacy, which includes the right to keep your sexual orientation, gender identity or that you are transgender private…. This means that even if you are 'out' about your sexual orientation or gender identity at school, if you're not 'out' to your parents at home … then school staff can't tell your family that you are LGBTQ+ without your permission."[23] This comes from the AG's page called "Know Your Rights" that only admitted there are "some limited circumstances your school can tell your parents something about your sexual orientation or gender identity"—and "only if they have a very good reason for doing so." That page leaves out any mention of Federal requirements.[24]

The CDE's longstanding guidance accompanying AB 1266 was even more direct. For eight years (and at least until December 2024), the CDE's website included frequently asked questions and answers on the topic of disclosures to parents:

- In response to whether "a student's gender identity [may] be shared with the student's parents," the CDE said that "[t]he right of transgender students to keep their transgender status private is grounded in California's antidiscrimination laws as well as federal and state laws."[25] "Disclosing that a student is transgender without the student's permission may violate California's antidiscrimination law by increasing the student's vulnerability to harassment and may violate the student's right to privacy."[26]

---

[21] https://oag.ca.gov/system/files/attachments/press-docs/Legal%20Alert%20re%20Forced%20Outing%20Policies.1.10.24_0.pdf
[22] *Id.*
[23] https://oag.ca.gov/lgbtq/rights
[24] *Id.*
[25] https://web.archive.org/web/20221231104806/https://www.cde.ca.gov/re/di/eo/faqs.asp#accordionfaq
[26] *Id.*

Page 11 – Superintendent Tony Thurmond

- In response to "[w]hat steps should a school or school district take to protect a transgender or gender nonconforming student's right to privacy," the CDE "strongly recommended" that schools "keep records that reflect a transgender student's birth name and assigned sex … apart from the student's school records." The CDE also recommended "placing physical documents in a locked file cabinet in the principal's or nurse's office." And "[p]ursuant to the above protections," the CDE indicated that "schools must consult with a transgender student to determine who can or will be informed of the student's transgender status, if anyone, including the student's family. With rare exceptions, schools are required to respect the limitations that a student places on the disclosure of their transgender status, including not sharing that information with the student's parents."[27]

The CDE has claimed that these questions and answers have been replaced with updated guidance for AB 1955, such that they no longer contribute to schools ignoring their FERPA obligations.[28] But there are several reasons to doubt the CDE on that score. For one, it appears that the CDE continues to use its previous AB 1266 FAQ guidance. Effective July 1, 2025, the CDE implemented PRISM, which is a mandatory LGBTQ+ competency training for teachers and other certificated employees.[29] Filings in litigation indicate that the PRISM training includes language that "closely tracks the prior FAQ page" guidance to AB 1266.[30]

School employees continue to operate with the understanding that the AB 1266 guidance has not been rescinded and that school employees are required to follow the guidance or risk their jobs. In litigation, a middle school teacher gave testimony describing guidance, training, and legal pressure from the CDE that led her to feel forced to mislead parents regarding students' "gender identities" in order to keep her job. She said, "While I understand that the CDE has removed the legal advisory and FAQ page from their website, I also understand that the CDE continues to assert that they accurately described the law that school districts must follow.... So I still feel bound by the training and instruction I received from school leadership, and under threat to abide by these policies or 'find a different job.'"

For another, it is our understanding is that the CDE has never affirmatively disavowed the guidance or publicly acknowledged the guidance violated Federal law. AB 1266 is still law in California, presumably with all associated guidance.[31] And the CDE's guidance was never directly predicated on AB 1266, but rather was "grounded in California's antidiscrimination laws," which have not materially changed since the CDE "updated" the guidance.[32] Neither those laws nor AB 1266 were amended by AB 1955—to the contrary, AB 1955 expressly disclaimed that it was a "change" in existing law. Calif. Edu. Code § 220.3. There is no reason to think that the CDE's views have changed since the passage of AB 1955. Nor have schools taken that position. Quite the opposite: Oakland Unified School District's gender support plan, for example, continues to include

---

[27] *Id.*
[28] https://www.cde.ca.gov/ci/pl/ab-1955-sum-of-prov.asp
[29] https://www.cde.ca.gov/ci//pl/prism.asp
[30] *Mirabelli v. Olsen,* Case No.: 3:23-cv-0768-BEN-VET Plaintiffs' Ex Parte Application for an Order to Show Cause re: Sanctions in the U.S. District Court in the Southern District of California, pg. 6
[31] *Mirabelli v. Olson,* Case No.: 3:23-cv-0768-BEN-VET Plaintiffs' Ex Parte Application for an Order to Show Cause re: Sanctions in the U.S. District Court in the Southern District of California
[32] https://web.archive.org/web/20221231104806/https://www.cde.ca.gov/re/di/eo/faqs.asp#accordionfaq

Page 12 – Superintendent Tony Thurmond

a disclaimer that it "should not be placed in the student's file to maintain privacy," citing AB 1266— a clear reference to the CDE's previous FAQs.[33]

If anything, AB 1955 *reaffirms* the CDE's earlier FAQs, which clearly violate FERPA. When AB 1955 was introduced, the findings and declarations included that "it can be harmful to force young people to share their full identities before they are ready," even with "[p]arents and families."[34] And schools have read AB 1955 in the same way. Irvine Unified School District, for example, cites AB 1955 to justify its directive to school administrators to "[r]espect student's individual choice to be 'out' and be themselves at school, and seek their permission of when and to whom staff can discuss their LGBTQ+ identity."[35] Similarly, in a deposition, the superintendent of Escondido United School District agreed that, even after AB 1955's passage, "no document from the Attorney General's office or the CDE" says "anything different than what they've previously said."[36] The "consistent message" is that "a student gets to determine, based on their constitutional right to privacy, who finds out about their transgender status."[37] It is implausible that AB 1955's passage *cured* the tension between California's policies and FERPA's requirements.

In sum, California's guidance is an unbroken string of communications directing schools to hide "gender identity" information from parents contrary to Federal law. Although that guidance may have undergone incremental changes over the years, California has never backed down from the position that, outside of very limited (and hardly defined) circumstances, parents need their children's consent to access their education records, even though Federal law requires the opposite.

### b.    California's laws, guidance, and other actions have effectively coerced school districts to violate FERPA.

The views California has expressed through guidance are not merely abstract. California has shown a willingness to target schools, whether by letter or by litigation, when it feels those schools unjustifiably share "gender identity" information with parents. And these actions have had their intended effect. California's efforts have directly caused schools to violate FERPA, by policy or by practice.

California has persistently targeted schools that do not comply with its guidance on concealing students' "gender identity" from parents. Its campaign against the Chino Valley Unified School District illustrates the point. On July 20, 2023, the school board voted to adopt a parental notification policy that would require educators to inform parents within three days of a student requesting to change name, pronouns, or use a facility that did not align with the sex listed on their official record.[38] The State's reaction was swift; Superintendent Thurmond attended the board meeting to protest the policy,[39] later posting on social media that the parental notification policy

---

[33] https://cdn01.dailycaller.com/wp-content/uploads/2025/05/Gender-Support-Plan_Redacted.pdf

[34] See AB 1955 Section 2(d). https://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=202320240AB1955

[35] See "List of Student Rights." https://iusd.org/students-and-parents/parent-and-family-engagement/lgbtq-community

[36] Deposition of Luis Rankins-Ibarra at 70:23-71:16, *Mirabelli*, No. 3:23-cv-0768-BEN-VET, Doc. 247-19 (S.D. Cal. July 16, 2025).

[37] *Id.*

[38] https://libertyjusticecenter.org/wp-content/uploads/Chino-Valley-Unified-School-District-Parental-Notification-Policy.pdf

[39] *See* "CVUSD Meeting of the Board of Education – July 20th, 2023" 1:23:48-1:27:07 https://www.youtube.com/live/PE6cH15Goy0?si=qG2s4j7LWk4fxSLx&t=5027

Page 13 – Superintendent Tony Thurmond

threatens students' safety.[40] The California Attorney General's response was similarly unequivocal. He sent a letter to the board, accusing the board of "contradict[ing]" the CDE's "guidance in almost every respect" and expressing "serious concern" over the "significant harms that transgender students may suffer from being 'outed' to their parents against their will."[41] Finally, the California Attorney General issued a threat: his office had "a substantial interest in protecting the legal rights of children in California schools and protecting such children from trauma and exposure to violence."[42] As such, he would "not hesitate to take action as appropriate to vigorously protect students' civil rights."[43] And California followed through on its threat. On August 28, 2023, the Attorney General filed a complaint for declaratory and injunctive relief in State court,[44] in which he approvingly noted that "[m]any California districts … have incorporated [the CDE's] guidance into binding Administrative Regulations."[45] That complaint alleged that—by adopting the parental notification policy—Chino Valley Unified School District violated the California Constitution and State antidiscrimination law.[46]

This was not an isolated incident. Later that year, the Dry Creek Joint Elementary School Board voted to adopt a parental notification policy similar to Chino Valley's. That prompted a letter from the Attorney General accusing that board of instituting a "forced 'outing' policy" and pointing to the suit against Chino Valley as evidence that, under such a policy, "significant harm to students was likely to occur."[47] The AG's letter parroted the CDE's guidance that "schools are required to respect the limitations that a student places on the disclosure of their transgender status, including not sharing that information with the student's parents," subject to "rare exceptions."[48] Along the same lines, the AG endorsed the CDE's recommendation that "disclosure of a student's status to parents" take place "only" when there is a "specific and compelling 'need to know.'"[49] The letter goes further to admit there are instances when parents *can* be informed: "[s]chools can inform parents with a student's consent; schools can inform parents where there is a specific and compelling need to protect the student; students can inform parents when they are ready, in the time and manner chosen by the family; schools can encourage students to inform their parents; and schools can help students initiate these conversations with parents through counseling and other support services."[50] Not one mentioned parental rights under FERPA. And the letter closed—again—with a threat: the Attorney General would "not hesitate to take action as appropriate to vigorously protect students' civil rights."[51]

---

[40] https://x.com/TonyThurmond/status/1682240216491520000?s=20

[41] https://oag.ca.gov/system/files/attachments/press-docs/7.20.23_Item%20II.A.1%20on%20July%2020%2C%202023%20Agenda%20--%20%E2%80%9CNew%20Board%20Policy%205020.1%20%E2%80%93%20Parental%20Notification%E2%80%9Ddocx%20%282%29.pdf

[42] *Id.*

[43] *Id.*

[44] https://edsource.org/wp-content/uploads/2023/08/082723.Complaint.pdf

[45] *Id.*

[46] *Id.*

[47] https://oag.ca.gov/system/files/attachments/press-docs/9.14.23_Dry%20Creek%20Parental%20Notification%20Policy%20letter.FINAL_.pdf

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] *Id.*

Page 14 – Superintendent Tony Thurmond

Rocklin Unified School District encountered similar resistance when it passed a parental notification policy of its own in September 2023.[52] A few short months later, the CDE's Education Equity UCP Office launched an investigation into the district per a complaint that the policy violated the state's anti-discrimination policy and ultimately found that the policy violated State law.[53] When the district appealed those findings, the CDE responded: "A student retains a reasonable expectation of privacy in their gender identity with respect to non-disclosure to their parents at home, even if open about their gender identity at school."[54] And on April 10, 2024, the CDE filed a lawsuit to challenge the district's policy.[55]

Even short of instituting its own lawsuit, California has been eager to join litigation to discourage schools from informing parents of their children's "gender identity." In *Mae M. v. Komrosky*, a coalition of students, parents, teachers, and a local teacher's union sued Temecula Valley Unified School District to enjoin the implementation of the school board's parental notification policy.[56] Less than two weeks after the plaintiffs sought a preliminary injunction, the Attorney General filed an amicus brief arguing that the parental notification policy violates the California State Constitution's Equal Protection Clause by unlawfully discriminating against and "singling out transgender and gender-nonconforming students," violates the Education Code and Government Code's antidiscrimination provisions, and "violates the California Constitutional Right to Privacy."[57]

California's activism has had its intended effect. As noted earlier, "[m]any California districts … have incorporated [the CDE's] guidance into binding Administrative Regulations."[58] When faced with the choice of complying with FERPA or following California's demands, schools often choose the latter. Irvine Unified School District noted on its FAQ page for "Gender Changes" that "[t]here is ambiguity in the law as to the extent that a parent/guardian controls a student's educational records."[59] In particular, while FERPA "dictate[s] that only the parent/guardian can request changes to the student's record," the "California Department of Education has issued guidance in this area, which highlights the critical necessity in protecting a student's privacy interest if they cannot express their gender identity at home."[60] Given "these two conflicting areas of law," the district concluded: "we recommend *but do not require* parent/guardian approval."[61]

---

[52] https://www.cbsnews.com/sacramento/news/big-turnout-as-rocklin-unified-meets-to-vote-on-controversial-change-to-policy-on-transgender-students/

[53] *See California Department of Education v. Rocklin Unified School District,* "Petition for Writ of Mandate," Exhibit C, page 21. https://libertyjusticecenter.org/wp-content/uploads/CDE-vs-RUSD.pdf

[54] *See California Department of Education v. Rocklin Unified School District,* "Petition for Writ of Mandate," Exhibit D, page 34. https://libertyjusticecenter.org/wp-content/uploads/CDE-vs-RUSD.pdf

[55] *California Department of Education v. Rocklin Unified School District,* https://libertyjusticecenter.org/wp-content/uploads/CDE-vs-RUSD.pdf

[56] https://publiccounsel.org/wp-content/uploads/2023/07/TVUSD-MPA-as-filed.pdf

[57] *See Mae M. et al. v. Joseph Komrosky et al.,* "Attorney General's Ex Parte Application to File Brief of Amicus Curiae," pg. 7, Section I; pg. 8, Section A.1; pg. 12, Sections B and C. https://oag.ca.gov/system/files/attachments/press-docs/1.%20Ex%20Parte%20Application-RJN%20%2B%20Proposed%20Amicus%20Brief.pdf

[58] https://edsource.org/wp-content/uploads/2023/08/082723.Complaint.pdf

[59] See "Why Do We Recommend Parent/Guardian Approval For This Process?" subsection of section "FAQ Name/Gender Changes." https://iusd.org/students-and-parents/parent-and-family-engagement/lgbtq-community

[60] *Id.*

[61] *Id.* (emphasis added).

Page 15 – Superintendent Tony Thurmond

And, of course, the prospects of lengthy litigation proceedings chill schools from attempting to choose FERPA over California's contrary guidance. Chino Valley Unified School District may be the perfect example. In response to SPPO's request for information, the district indicated that "the state's guidance creates a countermand to FERPA's parental right of access to records," and that "[i]f the state did not create this conflict, the general professional and legal obligation would be to maintain comprehensive, official records, which would be accessible to parents under FERPA."[62] According to Chino Valley, "the state's guidance is the primary impetus" for maintaining filing systems hidden from parents, and "[b]ut for the state's guidance, policies, and other actions…. staff would be significantly less likely to evade compliance" with FERPA.[63]

### c.    California's guidance and actions are contrary to FERPA.

The cumulative effect of California's guidance and actions is to pressure schools to disregard FERPA's requirements.

FERPA provides that "the parents of students" have "the right to inspect and review the education records of their children." 20 U.S.C. § 1232g(a)(1)(A). Regulations confirm the same. Except for when a single record implicates multiple students, "a parent … *must* be given the opportunity to inspect and review the student's education records." 34 C.F.R. § 99.10(a) (emphasis added). Because this right of inspection and review of minor students' records belongs to the parents, FERPA necessarily contemplates scenarios in which the parent can review education records without the minor student consent.

Indeed, FERPA "mandates" schools receiving Federal funds "to make education records available to parents upon request—whether the child wants their parents to have the records or not." *Ricard*, 2022 WL 1471372, at *7; *accord Gregory*, 350 F.R.D. at 68 (purpose of FERPA was to "ensur[e] parents' access to their children's educational records"). California's guidance, which describes telling parents of their children's "gender identity" without their consent as "forced outing" and a violation of State law, discourages schools from complying with FERPA.[64] And California's follow-up letters, suits, and threats give teeth to that guidance. In effect, because of California's policies and actions, federally funded schools in the State violate FERPA.

It is not as though California is unaware of FERPA. For instance, in *Chino Valley Unified School District v. Newsom*, California attempted to argue that its actions are consistent with

---

[62]Statement from Superintendent Norm Enfield on December 10, 2025 in response to SPPO's request for information regarding the investigation for potential FERPA violations by Chino Valley Unified School District.
[63] *Id.*
[64] We also doubt that FERPA can be evaded by telling schools to avoid creating any records at all. The point of FERPA was to "assure parents of students … access to their education records." 120 Cong. Rec. 39,862 (Dec. 13, 1974) (joint statement in explanation of amendment to FERPA). Directing schools not to create education records purely to avoid having to disclose them to parents would circumvent FERPA. *See, e.g.*, *Pugin v. Garland*, 599 U.S. 600, 607 (2023) ("'We should not lightly conclude that Congress enacted a self-defeating statute.'"); *The Emily*, 22 U.S. 381, 388 (1824) ("In construing a statute, penal as well as others, we must look to the object in view, and never adopt an interpretation that will defeat its own purpose, if it will admit of any other reasonable construction."). That is especially so given that FERPA "protect[s]" the "constitutional right of parents to direct their child's education." *Mirabelli v. Olson*, 691 F. Supp. 3d 1197, 1211 (S.D. Cal. 2023); *see also id.* at 1211-12 ("FERPA speaks to the Congressional elevation of the importance of parents being involved in their child's education.… The privacy right of a child, according to FERPA, takes second place to his or her parents' right to know.").

Page 16 – Superintendent Tony Thurmond

FERPA.[65] In that litigation and in response to the current investigation, California has made several arguments to take itself outside of a FERPA violation. First, California argued that AB 1955 is consistent with FERPA because it is "expressly limited by the phrase 'unless otherwise required by state and federal law.'"[66] Second, California argued that, while FERPA requires that parents have a right to access education records upon "request" 20 U.S.C. § 1232g(a)(1)(A), it does not require schools to proactively disclose information to parents.[67] And third, California argues that it has no obligation to ensure that local schools comply with FERPA.

None of those arguments is convincing.

To start, most of California's guidance was tied not to AB 1955, but rather to general State constitutional and antidiscrimination law. In discouraging schools from sharing "gender identity" information with parents, the CDE said that "[d]isclosing that a student is transgender without the student's permission may violate *California's antidiscrimination law* by increasing the student's vulnerability to harassment and may violate the student's right to privacy."[68] Even if California is right that the "unless otherwise required by state and federal law" clause creates a carve-out from AB 1955 for a Spending Clause statute like FERPA, that argument does nothing to expunge the threats California has made to schools under the California Constitution or California's other antidiscrimination laws.

Further, in more than one instance, California's AG provided legal guidance to districts that omit any mention of FERPA or Federal law requirements when discussing potential exceptions to State laws and policies. For instance, the Attorney General's 2024 legal alert document claimed to identify "numerous feasible and effective alternatives to forced disclosure policies"—but the only ones it listed absent student consent was "where there is a compelling need to do so to protect the student's well-being."[69] The Attorney General's letter referenced above to the board of Dry Creek Joint Elementary School District took a similar tack, only countenancing disclosure without student consent "where there is a specific and compelling need to protect the student."[70] The consistent message has been that, when it comes to disclosure, it is students' rights that matter—not parents'.

California's distinction between an affirmative duty to disclose (which California has sought to ban) and a duty to disclose upon request (which FERPA requires) is also unpersuasive. Each of California's legal theories—enunciated in guidance, threatened in letter, and litigated in court—applies equally to both scenarios. In California's view, disclosing a child's "gender identity" revealed in school to the parent without the child's consent violates the child's right to privacy and safety. If that is true, it does not make a difference whether that "gender identity" is in an education record, or whether the parent requested it. There is no escaping the fact that California views FERPA compliance as inconsistent with its constitutional and antidiscrimination

---

[65] No. 2:24-cv-1941 (E.D. Cal. Oct. 7, 2024), ECF No. 22.

[66] *Id.* at 24.

[67] *Id.* at 23.

[68] https://web.archive.org/web/20221231104806/https://www.cde.ca.gov/re/di/eo/faqs.asp#accordionfaq

[69] https://oag.ca.gov/system/files/attachments/press-docs/Legal%20Alert%20re%20Forced%20Outing%20Policies.1.10.24_0.pdf

[70] https://oag.ca.gov/system/files/attachments/press-docs/9.14.23_Dry%20Creek%20Parental%20Notification%20Policy%20letter.FINAL_.pdf

Page 17 – Superintendent Tony Thurmond

law. And schools have read California's guidance and interpreted California's enforcement actions in just that way.[71]

Finally, it does no good for California to disclaim any FERPA obligations when it is authorized to direct and control these schools and is the *driving force* for schools across the state disregarding Federal law. As Chino Valley's response to our investigation indicates, but for California's guidance, threats, and legal actions, schools would comply with FERPA. California has caused "educational agenc[ies] [and] institution[s]" to adopt "polic[ies] of denying" or "effectively prevent[ing]" parents from exercising "the right to inspect and review the education records of their children." 20 U.S.C. § 1232g(a)(1)(A). That is a violation of FERPA.

In any event, California's attempted disclaimer of any FERPA obligations contradicts other representations it has made to the United States. As a condition of receiving Federal financial assistance from the Department, the CDE has submitted to the Department a Grant Certification dated October 08, 2025, applicable to all Federal funding stating in part:

> As the duly authorized representative of the Department of Education California, I certify that Department of Education California: Will comply with the U.S. Constitution, all Federal laws, and relevant Executive guidance … in the administration of federally-funded programs. (See national policy requirements and 2 C.F.R 200.303 Internal controls) …. Will comply with all applicable requirements of all other Federal laws, executive orders, regulations, and public policies governing financial assistance awards and any Federal financial assistance project covered by this certification document ....

The CDE also signs grant agreements with the Department stating the money will be administered to programs that are in accordance with Federal law. As stated in the Federal grant agreement language, under Internal Control requirements under 2 C.F.R. § 200.303, grantees must: "Establish, document, and maintain effective internal control over the Federal award that provides reasonable assurance that the recipient or subrecipient is managing the Federal award in compliance with Federal statutes, regulations, and the terms and conditions of the Federal award." Grantees must also: "Comply with the U.S. Constitution, Federal statutes, regulations, and the terms and conditions of the Federal award. Evaluate and monitor the recipient's or subrecipient's compliance with statutes, regulations, and the terms and conditions of Federal awards. Take prompt action when instances of noncompliance are identified." 2 C.F.R. § 200.303.

Simply put, California and the CDE knows it must ensure Federal funds it receives or further allocates are being used in accordance with Federal law. That includes FERPA.

---

[71] Statement from Superintendent Norm Enfield on December 10, 2025 in response to SPPO's request for information regarding the investigation for potential FERPA violations by Chino Valley Unified School District.

Page 18 – Superintendent Tony Thurmond

**C) Requirements for the California Department of Education to Come into Compliance with FERPA**

In our June 3, 2025 letter, SPPO provided the CDE with an opportunity to issue additional clarification that would have alleviated our concern as stated above. In the absence of such clarification, compounded with the State's previous legal actions taken against districts who attempted to be more transparent with parents about their children's "gender identities," we find that the CDE is pressuring schools across the State into noncompliance with parental rights under FERPA to inspect and review all student education records.

Upon closer inspection of district policies throughout SPPO's investigation, we have concluded that simply specifying to your LEAs that "gender support plans" are considered education records under FERPA and are therefore also subject to review and inspection by parents of students, would not be sufficient in addressing the issues laid out in this section.

Accordingly, to resolve this investigation, we are now requiring that the CDE take the following corrective actions:

1) Publicize a clear definition of "official" and "unofficial" education records and then specify that under Federal law all forms of education records that do not otherwise see an exception under FERPA are subject to parental inspection upon request. This includes "gender support plans," any gender-related modifications to student documents, forms, and other internal files or records related to these changes. (This would require SPPO's review and approval prior to statewide issuance.)

2) Issue a new notice to superintendents and administrators informing them: that AB 1955, as well as all other CA education laws, regulations, and policies, should not be interpreted to undermine or contradict Federal law; that "gender support plans" or other related documentation that is directly related to a student and is maintained by the district or school, whether in official or unofficial files, are considered education records under FERPA, and are thus subject to review and inspection by the student's parents; and that violations of FERPA risk loss of Federal financial assistance. (This would require SPPO's review and approval prior to statewide issuance.)

3) Have LEAs submit certifications that they understand and are in compliance with corrective actions (1 and 2). Submit a report to this Office confirming which LEAs have certified and provide a list of those that have not.

4) Provide written assurance to this Office that CDE will allow LEAs to enforce FERPA regarding "gender identity" and pro-parental notification approaches in a manner that aligns with the needs of the districts to ensure compliance.

5) Provide written assurance to this Office, that CDE will incorporate into its established compliance monitoring program[72] LEA compliance with FERPA,

---

[72] https://www.cde.ca.gov/ta/cr/

Page 19 – Superintendent Tony Thurmond

including the specific provisions of FERPA as related to the issues addressed in this complaint, and

6) As part of the newly mandated training established on July 1, 2025, that satisfies the California Education Code (EC) Section 218.3(b)(1)'s (LGBTQ) cultural competency training for teachers and other certificated employees, the CDE must add FERPA training content that is approved by SPPO. Further, any other teacher trainings that reference privacy, "gender identity," discrimination/harassment or other similar topics will also be required to include the same FERPA training content approved by SPPO.

## III.    Conclusion

SPPO continued to correspond with the CDE with the hope of ensuring the CDE's compliance with FERPA, that California's LEAs had clarity regarding the law, and that the CDE understood their role in ensuring LEA compliance. Our Office requested a written report from the CDE by April 11, 2025, detailing steps taken, or planned, to ensure that LEAs in California comply with FERPA requirements as described in the March 27, 2025 Investigation Letter, including the submission of relevant policy statements or other communications. In the absence of such a production, SPPO requested a letter explaining why CDE believes this request is unwarranted.

Mr. Len Garfinkel, General Counsel (Counsel), responded on your behalf via a letter dated April 11, 2025, which SPPO found unsatisfactory. Because there is evidence in California of districts keeping "gender support plans" separate from education records as "unofficial records" in order to hide them from parents, SPPO responded with a letter on June 3, 2025, explaining the lack of sufficient communication to California's LEAs regarding "gender support plans" and their obligations under FERPA. The Department's March 28, 2025 Dear Colleague Letter and June 3, 2025 letter have also made abundantly clear the importance of clarifying to your LEAs what exactly constitutes "student records" under FERPA in that they include "gender support plans" and the like.

SPPO noted in the June 3, 2025 letter that parental advocacy groups, such as Interfaith Statewide Coalition, identified that school districts in California continue to develop "gender support plans," some without parental awareness.[73] As an example, the group stated: "Across 6 districts serving nearly 158,000 total students that provided data from the 2023-2024 school year, more than 300 children were placed on 'gender support plans' or had their names or pronouns modified in school systems." SPPO continues to have concerns regarding how "gender support plans" are shared with, or hidden from, parents at the district level. Therefore, in the June 3, 2025 letter, SPPO informed CDE that consistent with 34 C.F.R. § 99.66(a),[74] we were requesting the submission of further written information to address our unresolved concerns regarding "gender support plans." Specifically, SPPO requested CDE provide the following:

---

[73] https://dailycaller.com/2025/04/15/exclusive-blue-state-schools-facing-trump-admin-investigation-helped-hundreds-of-kids-change-their-gender-last-year/
[74] https://www.ecfr.gov/current/title-34/subtitle-A/part-99/subpart-E/section-99.66

Page 20 – Superintendent Tony Thurmond

    1)      An additional notice to superintendents and administrators, reminding them that "gender support plans" are typically education records under FERPA, and therefore also subject to review and inspection by parents of students, and

    2)      A plan of action demonstrating how CDE will ensure LEAs are complying with the provisions of FERPA as related to the issues discussed in the two notices discussed in 1) above given the context of AB 1955.

Subsequently, on June 9, 2025, Counsel responded on behalf of the CDE stating the following:

> The CDE is not aware of any legal authority that tasks a state educational agency under FERPA with issuing legal opinions to LEAs as to how to apply FERPA to particular factual situations, such as determining whether a particular document constitutes an "educational record" (as defined in FERPA) in a particular circumstance. The guidance and communications we have issued to LEAs in response to your previous requests encompassing this topic sufficiently apprise them of their obligations under FERPA.

> As to the second request, the CDE is likewise unaware of any legal authority that tasks a state educational agency with developing a state plan relating to FERPA compliance. As such, the request that the CDE develop such a plan in relation to issues of gender identity disclosure, specifically, is without authority.

As explained above, it is clear to this Department that the State of California has gone out of its way to ensure districts, schools, and individual staff feel obligated to violate FERPA when faced with the decision of turning over records to parents. Furthermore, the legal actions taken against districts like Chino Valley,[75] Temecula Valley,[76] and Rocklin Unified School District[77] demonstrate a coordinated statewide effort to curtail district or school-level efforts to afford parents the right to fully access their child's education records as required under FERPA.

To expedite the processing of this investigation, please respond in writing by close of business February 11, 2026. You may email your response to FERPA.ComplaintResponse@ed.gov, including the complaint number in the subject line. In lieu of sending your response electronically, you may send your written response to the following address:

Student Privacy Policy Office
U.S. Department of Education
400 Maryland Avenue, SW
Washington, D.C. 20202-8520

---

[75] https://libertyjusticecenter.org/cases/california-v-chino-valley-unified-school-district/
[76] https://publiccounsel.org/wp-content/uploads/2023/07/TVUSD-MPA-as-filed.pdf
[77] https://libertyjusticecenter.org/cases/california-department-of-education-v-rocklin-unified-school-district/

Page 21 – Superintendent Tony Thurmond

       Please forward any questions to my attention at PrivacyTA@ed.gov. We look forward to our continued partnership as we work to resolve the investigation as quickly possible.

Sincerely,

Frank E. Miller Jr.
Director
Student Privacy Policy Office